ANNIE E. BOYD, ADMINISTRATRIX OF THE ESTATE OF JAMES M. BOYD, DECEASED, v. JAMES T. WILSON.

(Filed 29 March, 1967.)

**1. Negligence § 25—**

In determining whether the evidence warrants the submission of the issue of contributory negligence to the jury, the evidence must be taken in the light most favorable to defendant and the evidence favorable to plaintiff disregarded, but if different inferences may be drawn from the evidence on the issue of contributory negligence, the issue should be submitted to the jury.

**2. Automobiles § 49— Evidence of contributory negligence of passenger in continuing to ride with drunk driver held for jury.**

Evidence tending to show that intestate engaged in a tour of night spots with defendant and others for a number of hours, during which

defendant drank a variety of intoxicants, that prior to the fatal accident in suit defendant drove the right wheels of the automobile off the hard-surface on several occasions, that defendant's passengers, including intestate, requested defendant to slow down, that one of the occupants, even though intoxicated, was aware defendant had been drinking by the way he drove and reacted, and that intestate on at least two occasions had opportunity to leave the vehicle without danger or even inconvenience, *held* sufficient to warrant the submission of the issue of intestate's contributory negligence in continuing to ride with an intoxicated and reckless driver.

APPEAL by plaintiff from *Fountain, J.,* October 1966 Civil Session of NEW HANOVER.

Civil action by plaintiff administratrix to recover for the wrongful death of her son, James Melvin Boyd. The deceased, a guest passenger in an automobile owned and operated by defendant, was crushed underneath the automobile when it left the right side of the road, rolled over, and threw deceased from his seat in the automobile. Defendant by his answer denies he was negligent and asserts in one of his further answers that he was so incapacitated by intoxication and lack of sleep that plaintiff's intestate was contributorily negligent in riding with him when he knew, or should have known, it was dangerous to do so, and that plaintiff's intestate should have left the automobile when he had opportunity to do so on at least two occasions.

Plaintiff's only witness concerning the accident and the preceding events was James Junior Miller, who testified substantially as follows: He and defendant worked at the same place, and on the evening of 4 October 1963 they got off work around 11 o'clock and went to the 602 Club. From there they proceeded to Highland Park, a colored amusement center, where they purchased and drank one-half pint of "white" whiskey. They then continued to Little Paradise Grill, where he and defendant purchased and consumed a quart of beer between them. Departing from Little Paradise Grill, they encountered Harlee Johnson, and the three of them went to Love Grove Tavern, where they had a drink of whiskey. "When we left Love Grove place, I think we came back down Nixon Street. I think that is where we got up with Julius Joe, if I am not mistaken. . . . I guess then it was one o'clock or after. . . . I don't guess by then I care what time it was." All of them continued to Mrs. Shavers' place, where one Leo Williams and plaintiff's intestate joined the group. From there they all proceeded to Malloy's Place. While at Malloy's Place, witness Miller proposed going to East Arcadia to see some girls, and they then traveled to the Dixie Vim Service Station, where Miller and Wilson furnished money to buy gas. When they left the service station for East Arcadia, de-

fendant Wilson was driving the automobile, and Boyd, Miller and three others were in the automobile. "After we left the station, we were on the other side of Riegel when I first dozed off. I know because I was awoke when we passed Riegel. James drove good when we were leaving Wilmington. He was a good driver then. The fastest speed he got to was, I guess, doing 70, at least 70 or over, I guess. That was after he passed Riegel. He drove good before he got to Riegel. . . . I did not see Boyd drink nor Leo nor Julius Joe. . . . I knew that Wilson had been drinking and I told them in court that I knew that. I told them in court that I could tell it by the way he acted, drove, and reacted. That is true."

The witness further testified that the right wheels of the automobile left the road on several occasions. Wilson was asked by his passengers, including Boyd, to slow down, to which he replied, "Cool it." Shortly thereafter, the wreck occurred and Boyd died before the ambulance arrived.

On cross-examination, the witness admitted he signed a statement which tended to contradict his testimony, but denied he said or authorized the contradictory matter set out in the statement.

Defendant offered no evidence. Issues of negligence, contributory negligence and damages were submitted to the jury. The jury answered the issue of contributory negligence in favor of defendant, and from judgment on the verdict plaintiff appealed.

*Burney & Burney and Rountree & Clark for plaintiff.*
*W. G. Smith for defendant.*

BRANCH, J. The sole question presented by this appeal is whether there was sufficient evidence to warrant the submission of the issue of contributory negligence to the jury. "In passing on the question, we must take the evidence in the light most favorable to the defendant, disregarding that which is favorable to the plaintiff. 'If different inferences may be drawn from the evidence on the issue of contributory negligence, some favorable to plaintiff and others to the defendant, it is a case for the jury to determine.' " *Wilson v. Camp,* 249 N.C. 754, 107 S.E. 2d 743. " 'The right of trial by jury should be carefully preserved, and if there is any evidence, more than a scintilla, it is a matter for the jury and not the court.' " *Absher v. Raleigh,* 211 N.C. 567, 190 S.E. 897.

In the case of *Beam v. Parham,* 263 N.C. 417, 139 S.E. 2d 712, the evidence tended to show that when an automobile operated by the defendant was about five miles from the home of plaintiff's intestate, the owner of the car insisted that he drive and changed seats for that purpose; all persons in the car had drunk beer in the af-

ternoon before going to a dance. The evidence tended to show that plaintiff's intestate did not know the owner had drunk more beer at the dance hall, and although she knew he had been drinking, the defendant did not appear to be intoxicated. Plaintiff's intestate and other occupants of the car repeatedly remonstrated with the owner concerning the manner in which he operated the car and asked him to stop and let them get out. The question presented was whether plaintiff's intestate, a 40-year old woman, was guilty of contributory negligence in remaining in the automobile rather than facing the possibility of being left late at night on a rural road when the defendant took over the driving. Holding that this was a question for the jury, the Court stated:

> "When a gratuitous passenger becomes aware that the automobile in which he is riding is being persistently driven in a reckless and dangerous manner, the duty devolves upon him in the exercise of due care for his own safety to caution the driver, and, if his warning is disregarded, to request that the automobile be stopped and he be permitted to leave the car. He may not acquiesce in a continued course of negligent conduct on the part of the driver and then collect damages from him for injury proximately resulting therefrom. . . . This duty is not absolute but is dependent upon circumstances. Where conflicting inferences may be drawn from the circumstances, whether the failure of the passenger to avail himself of opportunity for affirmative action for his own safety should constitute contributory negligence is a matter for the jury. It is not the duty of a guest, under all circumstances of negligent or reckless driving, to ask to be allowed to leave the vehicle. A guest who feels endangered by the manner in which a car is operated cannot ordinarily be expected to leap therefrom while it is in motion. A passenger is required to use that care for his own safety that a reasonably prudent person would employ under the same or similar circumstances. Whether he has measured up to this standard is ordinarily a question for the jury. . . ."

Another leading case in North Carolina on this point is *Dinkins v. Carlton*, 255 N.C. 137, 120 S.E. 2d 543, where the evidence tends to show that three teen-age boys at about 3:30 A.M. agreed to ride with defendant, a man 29 years of age, with the understanding that one of the boys would drive. En route, defendant objected to the slow speed and took over the operation of the car. There was no evidence that the boys cautioned, warned or objected to the manner in which he operated the car. The court recognized that the boys could have remained in a country churchyard at 4:00 o'clock

A.M., but suggested that the matter should be considered as to how things reasonably appeared to the boys when they were in the churchyard. Holding that the evidence did not show contributory negligence as a matter of law, but did require submission of the issue of contributory negligence to the jury, the Court, in part, said:

> " 'The passenger is required to use that care for his own safety that a reasonably prudent person would employ under same or similar circumstances. Whether he has measured up to this standard is ordinarily a question for the jury.' . . . In 5 Am. Jur., Automobiles § 712, it is stated: 'The duty of an invited passenger in an automobile is so dependent upon special circumstances, and upon such varied and conflicting notions of the propriety of interference in the management of the automobile, that in cases of accident the courts are loath to hold such a passenger guilty of contributory negligence as a matter of law. Ordinarily, the question of the contributory negligence of a guest in an automobile involved in a collision, is for the jury to decide in the light of all the surrounding facts and circumstances.' "

The rules recognized by this Court for determining whether a guest passenger who voluntarily enters or remains in an automobile operated by a driver he knows to have been drinking intoxicants, or who has been driving in a reckless manner, are clearly set out in many applicable cases reviewed by Parker, J. (now C.J.) in *Bell v. Maxwell*, 246 N.C. 257, 98 S.E. 2d 33.

In the instant case the evidence discloses that plaintiff's intestate was engaged in a tour of night spots with defendant and others for several hours. The only witness who had been "sharing the cups" with plaintiff's intestate was in such a state that he "didn't care what time it was" and in his condition was able to form an opinion that Wilson had been drinking by "the way he acted, drove, and reacted." The evidence does not reveal that Boyd had been drinking. Certainly he was in better position to observe and know Wilson's condition than witness Miller. The evidence reveals that Boyd had at least two opportunities to leave the automobile which defendant was operating without danger or even inconvenience.

Applying the rules of evidence recognized and enunciated by this Court, there is ample evidence to require the submission of the question of plaintiff intestate's contributory negligence to the jury.

The finding of negligence against the defendant and contributory negligence against plaintiff, under a proper charge by the trial judge, settled this controversy. We find

No error.