DANIEL ALEXANDER McGILL AND WIFE, JANIE McGILL v. DR. THOMAS N. FRENCH AND THE LAURINBURG SURGICAL CLINIC, P.A.

No. 108PA92

(Filed 8 January 1993)

1. **Negligence § 34 (NCI3d) — medical malpractice — failure to inform patient of cancer — submission of contributory negligence to jury**

The Court of Appeals erred in a medical malpractice action by holding that the trial court erred in submitting the issue of contributory negligence to the jury on the ground that the verdict of negligence could only have been based upon failure to inform plaintiff of his prostatic cancer, so that contributory negligence by plaintiff in not keeping appointments was impossible. The Court of Appeals failed to recognize that plaintiff alleged negligence in seven different respects and seriously contended and offered evidence in support of at least four of his contentions. The Court of Appeals erred in assuming that the particular act of negligence upon which the jury based its verdict was defendant's alleged failure to inform plaintiff of his cancer.

**Am Jur 2d, Negligence §§ 1099-1103; Physicians, Surgeons and Other Healers § 263.**

McGILL v. FRENCH

[333 N.C. 209 (1993)]

Medical malpractice: patient's failure to return, as directed, for examination or treatment as contributory negligence. 100 ALR3d 723.

Malpractice: failure of physician to notify patient of unfavorable diagnosis or test. 49 ALR3d 501.

Contributory negligence or assumption of risk as defense in action against physician or surgeon for malpractice. 50 ALR2d 1043.

2. Negligence § 34.1 (NCI3d); Physicians, Surgeons, and Allied Professions § 17.1 (NCI3d) — medical malpractice — failure to inform patient of cancer — failure of patient to keep appointments — contributory negligence

There was sufficient evidence to submit contributory negligence to the jury in a medical malpractice action where plaintiff alleged that defendant was negligent in not informing him of his prostate cancer; defendant contended that plaintiff was contributorily negligent in not keeping appointments; there was medical testimony that defendant met the appropriate standard of care by electing to observe plaintiff, as plaintiff was asymptomatic, and begin treatment when he experienced pain or other symptoms; there was evidence that plaintiff was experiencing symptoms but failed to contact defendant or to keep an appointment; there was expert testimony that the responsibility for the well-being of a patient is a shared responsibility between the patient and his physician; and there was testimony that the cancer does not spread as fast once treatment has begun. The proximate cause issue of contributory negligence does not necessarily or in all cases require medical expert testimony; the jury, based on its own knowledge and experience, could understand and determine that had plaintiff followed the advice of defendant and either returned for follow-up care or called, his treatment could have begun earlier and thus the rate of spread of his disease might have lessened.

Am Jur 2d, Negligence §§ 1099-1103; Physicians, Surgeons and Other Healers § 263.

Medical malpractice: patient's failure to return, as directed, for examination or treatment as contributory negligence. 100 ALR3d 723.

McGILL v. FRENCH

[333 N.C. 209 (1993)]

**Malpractice: failure of physician to notify patient of unfavorable diagnosis or test. 49 ALR3d 501.**

**Contributory negligence or assumption of risk as defense in action against physician or surgeon for malpractice. 50 ALR2d 1043.**

On discretionary review pursuant to N.C.G.S. § 7A-31(a) of an unpublished decision of the Court of Appeals, 105 N.C. App. 246, 412 S.E.2d 700 (1992), finding error in the submission of the issue of contributory negligence to the jury by Clark, J., in Superior Court, Robeson County, on 29 August 1990 and remanding the case for a new trial on the issue of damages only. Heard in the Supreme Court 9 September 1992.

*Britt & Britt, by William S. Britt, for plaintiff-appellees.*

*R. C. Carmichael, Jr., for defendant-appellants.*

LAKE, Justice.

This is a medical malpractice case involving submission to the jury of the issue of plaintiff's contributory negligence, and whether the Court of Appeals, in holding the trial court should not have submitted the issue, erred in its analysis of the allegations and evidence of negligence and in its determination of the appropriate evidentiary standard for the requisite causal connection in establishing proximate cause. We conclude the Court of Appeals erred in both respects and, accordingly, reverse.

Plaintiffs filed a complaint against defendants[1] alleging that defendant, Dr. French, was negligent in, *inter alia*, diagnosing prostate cancer and not informing plaintiff-patient, Daniel Alexander McGill, or the referring physician, Dr. Woolfolk. Defendant filed an answer denying the allegations and alleging contributory negligence on the part of the plaintiff. The jury reached a verdict finding negligence on the part of defendant and also contributory negligence on the part of plaintiff, Mr. McGill. Plaintiff appealed, and the Court of Appeals held on two grounds that the trial court

---

1. When reference is made to the defendants, we will use "defendant" or "Dr. French," since plaintiffs' action against The Laurinburg Surgical Clinic is based solely upon plaintiffs' claim that the negligence of Dr. French is imputed to the defendant clinic. Likewise, we will refer to plaintiffs as "plaintiff" or "Mr. McGill."

erred in submitting the issue of contributory negligence to the jury and remanded the case for a new trial only on the issue of damages.

Prior to June 1982, plaintiff, Daniel McGill, was a patient of Dr. Donald Woolfolk, a physician specializing in internal medicine, who practices in Laurinburg, North Carolina. Dr. Woolfolk was treating Mr. McGill for lung problems. Mr. McGill, a farmer, had suffered from emphysema and two heart attacks prior to 1982. In June 1982, Dr. Woolfolk sent plaintiff to Dr. Thomas B. Barnett at the University of North Carolina School of Medicine at Chapel Hill for consultation regarding breathing problems. In a letter to Dr. Woolfolk, dated 25 June 1982, Dr. Barnett noted a prostatic enlargement with an elevation of Mr. McGill's serum acid phosphate level and recommended that he be seen by a urologist for further consultation.

Thereafter, Dr. Woolfolk referred Mr. McGill to defendant, Dr. French, a board certified urologist, who saw him on 2 July 1982. Dr. French noted an enlarged prostate and scheduled Mr. McGill for an intravenous pyelogram (I.V.P.) on 6 July 1982. This test showed mild prostatic enlargement. After receiving the results of the I.V.P., Dr. French testified that he tried unsuccessfully for several weeks to a month to get in touch with Mr. McGill in order to discuss the results with him.

Dr. French did not see Mr. McGill again until 26 August 1983, in the Scotland Memorial Hospital emergency room where Mr. McGill was seeking treatment for urinary retention. Mr. McGill remained in the hospital from 26 August 1983 until 1 September 1983. During the hospitalization, Dr. French performed a prostatectomy on Mr. McGill. In a pathology report dated 29 August 1983, the pathologist diagnosed prostatic cancer in the obtained specimen. Dr. French did not inform Mr. McGill of the diagnosis before Mr. McGill's release from the hospital on 1 September 1983 because, according to Dr. French, the diagnosis was not included in the medical chart at the time of Mr. McGill's discharge.

Mr. McGill returned for office visits with Dr. French on 16 September 1983 and 10 October 1983. During the 16 September office visit, Dr. French testified that for the first time he told Mr. McGill of the prostate cancer diagnosis. Dr. French testified he took ten to fifteen minutes to explain to Mr. McGill that he had a bad cancer of his prostate, that it was "on the more wildly

McGILL v. FRENCH

[333 N.C. 209 (1993)]

malignant end of the spectrum," that he was going to have trouble with it shortly, and that it was necessary to keep a close watch on him for the first sign of back pain or bone pain or any other type of difficulty he might have. Dr. French testified that he also explained to Mr. McGill that it was imperative that he return to the office to see the doctor promptly when asked. Dr. French did not undertake any treatment other than observation of Mr. McGill at or following the 16 September visit. Instead, Dr. French testified that he planned to offer either diethylstilbestrol (D.E.S.) or an orchiectomy if Mr. McGill had come back as he was told upon his first experience of pain or discomfort.

During the 16 September 1983 visit, an appointment for Mr. McGill was made for 17 October 1983. Mr. McGill saw Dr. French on 10 October 1983, earlier than his scheduled appointment, and he missed his 17 October appointment. On 10 October, Mr. McGill did not complain of any symptoms referable to his prostate cancer. Dr. French testified that he again sat down with Mr. McGill and had the same conversation he had with him during the September visit. He also told Mr. McGill that it did not matter in the course of the disease when he started treatment because it would not change his quality of life or his life expectancy since he was asymptomatic and in an advanced stage of carcinoma of the prostate. Dr. French thereafter scheduled Mr. McGill for an appointment on 11 January 1984, which Mr. McGill did not keep. Dr. French contends, and plaintiff controverts, that appointment cards or some kind of notice was sent to Mr. McGill after he missed his January appointment. Dr. French's nurse testified that in her thirty years experience at Laurinburg Surgical Clinic, it was her responsibility and practice in the relevant years of 1983 and 1984 to call a cancer patient several times a day if he missed an appointment and, in the event of no contact, she would send a postcard. She would then report to Dr. French the results of her efforts.

Mr. and Mrs. McGill both testified that Dr. French did not tell them at any time that he had made a diagnosis of prostatic cancer. Dr. French testified that he told Mr. McGill of the diagnosis on each office visit following the 29 August pathology report.

In June 1984, Mr. McGill experienced stomach pain and went to Dr. Woolfolk who hospitalized him on 20 June 1984. At that time, Dr. Woolfolk discovered that Mr. McGill had prostatic cancer which had been present since his hospitalization in August 1983.

Mr. and Mrs. McGill stated that this was the first time they were made aware of the 29 August 1983 diagnosis of prostatic cancer. In his deposition, Dr. Woolfolk stated that he was not aware of Mr. McGill's prostate cancer before the June 1984 hospitalization, at which time he rechecked the medical records of Scotland Memorial Hospital and found that Dr. French had noted in September 1983 that Mr. McGill had prostate cancer. Dr. Woolfolk further testified that when he told Mr. and Mrs. McGill, they were very surprised and shocked.

During the June 1984 hospitalization, Dr. Woolfolk called in Dr. French for consultation on 27 June 1984. At that time, Dr. French recommended starting Mr. McGill on estrogen therapy. Mrs. McGill stated that when she saw Dr. French as he was coming in for the consultation, she asked him why he did not tell them, and his answer was "well, it doesn't make any difference when you start treatment." Dr. French, in the capacity of consulting physician, then started Mr. McGill on D.E.S. and rocalcitrol and discharged him the next day. Mr. McGill was given a follow-up appointment with Dr. French the following month on 27 July 1984. Mr. McGill did not keep this appointment, and thereafter had no further contact with Dr. French.

Dr. Woolfolk referred Mr. McGill to Duke Hospital where a bilateral orchiectomy was performed by Dr. David F. Paulson in July 1984. It was noted in June 1984 that the cancer had spread to the bones. From 10 December 1984 to 24 January 1985, Mr. McGill was hospitalized in Moore County for the removal of two malignant tumors on his colon. He returned to Scotland Memorial Hospital with pneumonia on 30 January 1985 and stayed until 13 March 1985. Mr. McGill underwent a course of radiation treatment from 14 April 1986 through 18 June 1986 at Cape Fear Valley Hospital in Fayetteville by Dr. Hugh Bryan. He subsequently had several hospitalizations for pneumonia spanning the period from October 1986 to January 1990.

At the time of trial in August 1990, Mr. McGill was in very poor condition and testified by video deposition. The jury was also presented with a "Day in the Life" video of Mr. McGill. Mr. McGill died in January of 1991.

In reversing the trial court's entry of judgment on the verdict dismissing plaintiff's cause of action, on the ground that the trial court erred in submitting the issue of contributory negligence to

McGILL v. FRENCH

[333 N.C. 209 (1993)]

the jury, the Court of Appeals stated two reasons, and defendant appeals on those two grounds contending: (1) the Court of Appeals erred by determining, in disregard of the record, that the jury verdict could have been based *only* upon a finding of one of the several allegations of negligence; and (2) the Court of Appeals applied an inappropriate evidentiary standard, and there was sufficient, competent evidence from which the jury could conclude that plaintiff's negligence contributed to his injuries. We agree with defendant on both grounds, reverse the Court of Appeals, and order reinstatement of the judgment of the trial court.

[1]  With respect to the first ground, the Court of Appeals presumed that defendant's negligence was based upon his failure to inform Mr. McGill of his prostatic cancer. The Court of Appeals then reasoned that since the jury answered the question of defendant's negligence affirmatively, on this basis, this indicated that plaintiff had no knowledge of his illness, and such circumstance would make contributory negligence on his part impossible. In ruling that the jury verdict of defendant's negligence was based *solely* upon the allegations and evidence that defendant, Dr. French, negligently failed to inform Mr. McGill of his prostatic cancer, the Court of Appeals failed to recognize that the plaintiff alleged negligence in *seven* different respects and seriously contended and offered evidence in support of at least four of his contentions that Dr. French was negligent. Thus, it was error for the Court of Appeals to presume to know upon which of the several acts of negligence the jury relied and found as a fact to exist.

The plaintiff alleged the following different acts of negligence by the defendant: (1) Dr. French failed to institute radiation therapy or other appropriate therapy in 1982; (2) Dr. French failed to notify the referring physician, Dr. Woolfolk, in 1982 that the plaintiff was suspected of having prostate cancer and had not come back to Dr. French; (3) Dr. French failed to tell the plaintiff of the diagnosis of the cancer in 1983; (4) Dr. French failed to institute radiation therapy or other appropriate therapy in 1983; (5) Dr. French failed to inform the plaintiff's physicians, Dr. Ball and Dr. Woolfolk, in 1983 of the diagnosis of cancer and failed to discuss with them his ability to undergo treatment and the determination of appropriate treatment; (6) Dr. French failed to monitor the plaintiff with diagnostic tests; and (7) Dr. French failed to inform Dr. Woolfolk that the plaintiff had not come in for follow-up treatment after he was known to have the cancer in 1983. In his charge

to the jury, the trial judge reviewed each of these seven contentions and instructed the jury that,

> [I]f you are satisfied by the greater weight of the evidence in this case that the defendant, Dr. French, in his care and treatment of the plaintiff, did fail to comply with the standard of health care required by law *in any one or more of the ways that I have explained to you*, . . . it would then be your duty to answer the first issue yes in favor of the plaintiff.

(Emphasis added.) The jury returned with a verdict finding defendant negligent and the plaintiff contributorily negligent.

Although allegation of negligence number three (3), the failure to inform the plaintiff, could have been the act of negligence upon which the jury relied, there was evidence to support other allegations of negligence, and it is evident that one or more of the other separate contentions, and the evidence relevant thereto, could have supported the jury's verdict as to defendant's negligence. Thus, the jury still could have found the defendant negligent even if it believed his testimony that he told Mr. McGill about the cancer.

We therefore hold that the Court of Appeals erred in assuming that the particular act of negligence upon which the jury based its verdict was defendant's alleged failure to inform the plaintiff of his cancer. Our holding is consistent with several prior decisions of this Court which though factually distinguishable nonetheless support the principle that a reviewing court cannot appropriately determine, absent clear showing of record, upon what basis a jury renders its verdict. *See Bittle v. Jarrell*, 270 N.C. 266, 154 S.E.2d 43 (1967) (where the word "defendant" was erroneously used instead of the word "plaintiff" in the judge's charge to the jury regarding contributory negligence, this Court ordered a new trial since it could not say with certainty what the jury's intention was in reaching a verdict in favor of plaintiff); *Barber v. Heeden*, 265 N.C. 682, 144 S.E.2d 886 (1965) (holding that where conflicting instructions regarding burden of proof are given, the Court cannot assume a jury possesses such discriminating knowledge of the law as to be able to disregard the incorrect instruction and accept the correct one); *In re Will of Shute*, 251 N.C. 697, 111 S.E.2d 851 (1960) (holding that where conflicting instructions are given, one erroneous and the other correct, a new trial must be granted, for the jury is not presumed to know which one is correct and this Court cannot

say that it did not follow the erroneous instruction). The defendant's first assignment of error is well founded.

[2]    We next address the issue concerning the standard for determining whether there was sufficient, competent evidence to support a finding by the jury that plaintiff's failure to keep his appointments was a proximate cause of his injury. Relying on its prior decision in *Powell v. Shull*, 58 N.C. App. 68, 293 S.E.2d 259, *disc. rev. denied*, 306 N.C. 743, 295 S.E.2d 479 (1982), the Court of Appeals held that defendant failed to prove that the plaintiff's injuries were proximately caused by his own negligence. Concluding that the facts in the case *sub judice* are analogous to those in *Powell*, the Court of Appeals ruled that defendant presented no medical testimony showing a causal connection between Mr. McGill's missed appointments and his "illness," therefore no proximate cause was established, resulting in an erroneous submission of contributory negligence to the jury. We disagree.

Our first concern here is what the Court of Appeals meant by its use of the word "illness." The Court of Appeals seemed to focus on prostatic cancer as the illness in question. Clearly, the Court of Appeals is correct in stating that the failure of the plaintiff to keep his appointments after the cancer had been diagnosed did not proximately cause the cancer. However, it is more logical to focus on the *spread* or *rate of spread* of the previously diagnosed cancer as the "illness" or resulting injury, which is, from the actionable negligence standpoint in this case, what really debilitated plaintiff and shortened his life expectancy. Therefore, since the spread of cancer, not the contraction of it, is the illness or compensable injury which could be proximately caused by failure to keep appointments, we return to the substance of this issue.

In order for a contributory negligence issue to be presented to the jury, the defendant must show that plaintiff's injuries were proximately caused by his own negligence. N.C.G.S. § 1-139 (1983); *Powell*, 58 N.C. App. at 76, 293 S.E.2d at 264. The general rule in medical malpractice cases is that the plaintiff must establish proof of a causal connection between the negligence of the physician and the injury complained of by the testimony of medical experts. N.C.G.S. § 90-21.12 (1975); *Jackson v. Sanitarium*, 234 N.C. 222, 67 S.E.2d 57 (1951), *reh'g denied*, 235 N.C. 758, 69 S.E.2d 29 (1952); *Moore v. Reynolds*, 63 N.C. App. 160, 303 S.E.2d 839 (1983). The plaintiff in the case *sub judice* contends that the corollary of this

general principle is that the *defendant* also must offer proof of a causal relationship between the alleged acts of contributory negligence and the injury complained of by means of medical expert testimony. Although an exception to the general rule lies where the jury, based on its common knowledge and experience, can readily determine without expert assistance whether defendant proximately caused plaintiff's injuries, *Chapman v. Pollock*, 69 N.C. App. 588, 317 S.E.2d 726 (1984), plaintiff argues that the rate of spread of prostate cancer is not such that ordinary laypersons possess that information or knowledge. Plaintiff further contends that the defendant failed to offer any medical evidence that had Mr. McGill kept his appointments and returned to Dr. French, treatment could have begun earlier and the rate of spread of cancer might have been lessened.

We do not agree with the plaintiff that on the issue of contributory negligence, the defendant is required in all cases to present medical evidence of proximate causation. "It has never been the rule in this State . . . that expert testimony is needed in all medical malpractice cases to establish either the standard of care or proximate cause. Indeed, when the jury, based on its common knowledge and experience, is able to understand and judge the action of a physician or surgeon, expert testimony is not needed." *Powell*, 58 N.C. App. at 71, 293 S.E.2d at 261 (quoting *Smithers v. Collins*, 52 N.C. App. 255, 260, 278 S.E.2d 286, 289, *disc. rev. denied*, 303 N.C. 546, 281 S.E.2d 394 (1981)). Furthermore, once the standard of care is established, whether by expert or non-expert testimony, a doctor's departure from that standard may be shown by non-expert witnesses. *Powell*, 58 N.C. App. at 72, 293 S.E.2d at 261. As we have stated in *Jackson v. Sanitarium*:

> The courts generally recognize that the science of medicine is an experimental science and they have been extremely careful to protect physicians and surgeons against verdicts resting on non-expert testimony in those cases where non-expert testimony could constitute nothing more than mere conjecture or surmise . . . . Yet this Court has not and could not go so far as to say that in no event may a physician or surgeon be held liable for the results of his negligence unless the causal connection between the negligence and the injury or death be established by the testimony of a brother member of defendant's profession.
>
>         . . . .

McGILL v. FRENCH

[333 N.C. 209 (1993)]

. . . [I]n many instances proximate cause can be established only through the medium of expert testimony. There are others, however, where non-expert jurors of ordinary intelligence may draw their own inferences from the facts and circumstances shown in evidence.

*Jackson*, 234 N.C. at 226-27, 67 S.E.2d at 61-62.

The proximate cause issue of contributory negligence does not necessarily or in all cases require medical expert testimony. Since the standard of care by which the usual plaintiff is to be judged in medical malpractice cases is simply that of a person of ordinary prudence acting under the same or similar circumstances, in the case *sub judice* we are even more convinced that the jury, based on its own knowledge and experience, i.e., common sense, could understand and determine that had plaintiff followed the advice of defendant and either returned for follow-up care or called, his treatment could have begun earlier and thus the rate of spread of his disease might have lessened. Therefore, we conclude that medical expert testimony, although useful, is not required to show the causal connection between plaintiff's alleged contributory negligence and his injuries.

Applying the rule set forth above, we now must determine whether defendant met his burden. Although *Powell* addressed the same issue as in this case, e.g.—did the trial court err in submitting an issue of contributory negligence to the jury where the evidence was that the plaintiff missed one or more appointments with the defending physician—we find that the facts in *Powell* are distinguishable.

In *Powell*, the plaintiff alleged that her physician, Dr. Shull, negligently treated her between 17 April 1977 and 2 August 1977 for a fractured arm. According to the medical testimony at trial, there was a progressive slippage and an increase in displacement of the fracture. By 1 July 1977 (during the time of the alleged negligence), the displacement was probably 100% according to the testimony of the radiologist. Between 17 April and 1 August, the dates when the alleged negligence took place, the plaintiff kept all scheduled appointments. It was not until after 2 August 1977 that she failed to return to Dr. Shull's office or contact another doctor. The jury returned a verdict finding the defendant negligent and the plaintiff contributorily negligent. *Powell*, 58 N.C. App. at 69-70, 293 S.E.2d at 261. The Court of Appeals held that the

plaintiff's failure to keep her appointments did not proximately cause or even contribute to the injuries she received *prior to* 1 August 1977, and that there was no evidence that the degree of deformity in her arm as established by the 1 August x-rays would have been lessened by anything she did prior to or after 2 August 1977. *Id.* at 77, 293 S.E.2d at 264.

Several differences between the plaintiff's case in *Powell* and Mr. McGill's case distinguish the results. One critical difference is that unlike the plaintiff in *Powell*, Mr. McGill failed to keep his appointments during a crucial time of his illness. The evidence indicates, and the jury could have found that based on the testimony of two medical experts, Dr. Scholl and Dr. Paulson, Dr. French met the appropriate standard of care in 1983 by electing to observe Mr. McGill. Although he had the cancer, and the jury could have found that he had been informed of such, Mr. McGill was asymptomatic in September and October 1983, and it was Dr. French's plan to monitor him and then begin treatment by D.E.S. or orchiectomy at such time as Mr. McGill experienced pain or other symptoms. As demonstrated by the testimony of his daughter, Mr. McGill failed to contact Dr. French upon experiencing weight loss and weakness from the time he was discharged from the hospital in September 1983 until Christmas 1983. Moreover, his daughter further testified that from Christmas until June 1984 he was not as strong as he once was and could not do things that he once did without having to rest. Since there was evidence which tended to show that Mr. McGill was experiencing symptoms, yet he failed to contact Dr. French or keep his January 1984 appointment, the plaintiff effectively denied defendant the opportunity to treat plaintiff. Thus, whereas the plaintiff's injury in *Powell* was at its worst during a time when the plaintiff attended her scheduled appointments and nothing could have lessened the severity of her injury after that time, the jury found that Mr. McGill contributed to the worsening of his condition by failing to keep scheduled appointments after allegedly being told at least twice of the importance of so doing; and, most damaging of all, failing to contact Dr. French or any physician upon his first experience of symptoms.

In addition to the testimony of Dr. French himself, two expert witnesses for defendant and one expert witness for plaintiff testified in essence that the patient has an active responsibility for his own well-being. Dr. Paulson testified that the responsibility for the well-being of a patient is a shared responsibility between the

**IN RE FORECLOSURE OF MICHAEL WEINMAN ASSOCIATES**

[333 N.C. 221 (1993)]

patient and his physician. Dr. Woolfolk testified that a patient has a responsibility for his own care and is responsible for return visits to his doctor. Dr. Scholl testified that a patient has a large responsibility for his own care including return visits for follow-up, which in this case were mandatory. He further testified that even if plaintiff had not known of his cancer, there would have been reasons for his return. Moreover, as testified to by Dr. Paulson, the cancer does not spread as fast once treatment has begun either by orchiectomy or by estrogen manipulation. Based upon this testimony, which was medical evidence, the jury could infer that had plaintiff returned as he was instructed, whether or not he even knew of the cancer, the cancer might not have spread as fast had Dr. French been given the opportunity to begin the treatment as he planned. Thus, the testimony of these experts, as well as Dr. French's testimony and other evidence indicating the condition of plaintiff's health, is sufficient evidence for a jury to find a causal connection between missing appointments and the spread or increased rate of spread of cancer.

Accordingly, the decision of the Court of Appeals is reversed and the case is remanded to the Superior Court, Robeson County for reinstatement of the judgment entered upon the verdict of the jury.

REVERSED AND REMANDED.