VIRGINIA COBO, Executrix of the Estate of MICHAEL COBO v.
ERNEST A. RABA, M.D.

No. 127A97

(Filed 6 February 1998)

**Physicians, Surgeons, and Other Health Care Professionals § 120 (NCI4th)— medical malpractice—psychiatrist— patient engaging in unprotected homosexual conduct— contributory negligence**

The trial court erred by refusing to instruct the jury on the issue of contributory negligence in a medical malpractice action arising from defendant's treatment of plaintiff's decedent for depression where plaintiff's decedent, Dr. Cobo, had a history of depression; sought treatment from defendant and was treated for dysthymia, a form of depression, consistently with his prior diagnosis and treatment; the treatment had no connection to Dr. Cobo's AIDS, which ultimately caused his death; plaintiff's own expert admitted that homosexual conduct is unrelated to depression and that he was aware of no medical literature linking these conditions; there is no evidence that his unprotected homosexual activities were caused by, or related to, his depression; Dr. Cobo testified that he began having homosexual relations at age twenty, engaged in unprotected homosexual relations for more than ten years before he sought defendant's treatment, admitted that his contraction of AIDS was caused by his own conduct and told defendant that he thought his unprotected sex with a drug-addicted prostitute in a San Francisco bathhouse had probably caused his infection; and further acknowledged that he engaged in unprotected homosexual sex easily on a monthly basis in the early 1980s and that it takes only one time to contract AIDS. The jury could have reasonably determined, based on application of its own common knowledge and the expert testimony, that the restrictions Dr. Cobo placed on his treatment (including refusing medication and demanding that no notes be taken), his unremitting alcohol and drug abuse, his actions in ignoring and contravening his doctor's recommendations to seek treatment for his HIV status for three years, and his continued unprotected homosexual conduct constituted sufficient evidence that Dr. Cobo's actions were negligent, contributed to, and proximately caused each of the injuries of which he complained, particularly his physical injury.

COBO v. RABA

[347 N.C. 541 (1998)]

Appeal by plaintiff pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 125 N.C. App. 320, 481 S.E.2d 101 (1997), finding error in a judgment entered by Hight, J., on 5 July 1994 in Superior Court, Durham County, and ordering a new trial. Heard in the Supreme Court 16 October 1997.

*Maxwell, Freeman & Bowman, P.A., by James B. Maxwell, for plaintiff-appellant.*

*Ragsdale, Liggett & Foley, by George R. Ragsdale and David K. Liggett; and Anderson, Johnson, Lawrence, Butler & Brock, by Lee B. Johnson, for defendant-appellee.*

*Law Office of Martin A. Rosenberg, by Martin A. Rosenberg, on behalf of North Carolina Academy of Trial Lawyers, amicus curiae.*

*Golding, Meekins, Holden, Cosper & Stiles, by Elaine Cohoon Miller, on behalf of North Carolina Association of Defense Attorneys, amicus curiae.*

LAKE, Justice.

This is a medical malpractice case which presents the single issue of whether the asserted affirmative defense of plaintiff's contributory negligence should have been submitted to the jury. The Court of Appeals majority concluded the trial court committed reversible error by refusing to instruct on and submit this issue to the jury for its determination. For the reasons stated herein, we affirm the decision of the Court of Appeals.

At trial, the jury answered the single liability issue of defendant's negligence in plaintiffs' favor and awarded plaintiff, Dr. Michael Cobo, $850,000 in damages. On 15 June 1994, the trial court entered judgment against the defendant, Dr. Ernest Raba, in that amount. Defendant appealed to the Court of Appeals, which, in a divided panel, ordered a new trial. Prior to the decision of the Court of Appeals, Dr. Cobo died. His wife, Virginia Cobo, as Executrix of the Estate of Michael Cobo, was substituted as plaintiff in this action. The plaintiff executrix now appeals to this Court from the dissent below.

The record reflects the following evidence was before the trial court. The defendant was and is a practicing psychiatrist in Durham, North Carolina. Dr. Cobo began to see defendant as a

patient for his psychiatric problems in 1980 when he moved to Durham to accept a job at Duke University Medical School. Dr. Cobo had a history of psychiatric counseling and had previously been diagnosed and treated for depression with an antidepressant drug which produced adverse side effects. During Dr. Cobo's first visit with defendant, Dr. Cobo stated that he did not want to be treated with medication because his previous treatment with medication had "affected him badly" and had not been helpful. Since Dr. Cobo refused to give defendant a complete medical history, defendant conducted extensive psychological testing under the guidance of Dr. William Burlingame, a practicing psychologist. Defendant diagnosed Dr. Cobo as suffering from dysthymia, a form of depression less severe than major depression. Together, defendant and Dr. Cobo decided that since Dr. Cobo refused to be treated with medication, Dr. Cobo would be treated with psychoanalysis four times a week. Dr. Barry Ostrow, a board-certified psychiatrist with extensive experience, testified that dysthymia was the correct diagnosis and that psychoanalysis was the proper course of treatment for Dr. Cobo. Dr. Cobo's previous psychiatrists, Dr. Sam Bojar and Dr. O. Townsend Dann also treated and diagnosed Dr. Cobo in exactly the same manner. The psychoanalysis continued until December 1988. Throughout the patient-physician relationship, Dr. Cobo refused medication; required 6:00 a.m. appointments to avoid anyone seeing him with a psychiatrist; and demanded that defendant take no notes during the treatment sessions in order to protect Dr. Cobo's identity and confidentiality in the event his marriage fell apart and his wife filed a lawsuit against him.

The evidence before the jury further reflected that Dr. Cobo had engaged in high-risk behavior, including drug abuse, alcohol abuse and unprotected homosexual sex, for most of his adult life. Before seeking defendant's medical assistance, Dr. Cobo had multiple unprotected homosexual encounters with paid prostitutes. In 1981, Dr. Cobo's unprotected homosexual encounters increased, as he testified, to "easily a monthly basis" through 1986. Dr. Cobo acknowledged that "anyone in the early '80s who opened up a Newsweek magazine would know of the risk" of unprotected sex and admitted that he may have contracted acquired immunodeficiency syndrome (AIDS) after unprotected sex with a prostitute in San Francisco in the early 1980s. Defendant advised Dr. Cobo that he "was making some very dangerous choices [regarding sexual partners and homosexual activity] and recommended they stop," and defendant dis-

cussed with Dr. Cobo the risk of sexually transmitted diseases. Defendant also warned Dr. Cobo of the effects of drug and alcohol abuse and specifically with regard to their adverse impact on his psychoanalysis treatment. Although Dr. Cobo was an infectious disease expert and knew his behavior was dangerous, he continued these high-risk activities.

In December 1986, Dr. Cobo tested positive for human immunodeficiency virus (HIV). Defendant prescribed medication to treat Dr. Cobo's anxiety and depression and continued psychoanalysis treatment sessions. Defendant recommended that Dr. Cobo seek medical treatment for HIV, but his advice went unheeded until November 1989 when Dr. Cobo was diagnosed with full-blown AIDS. In December 1988, the doctor-patient relationship was mutually terminated, and Dr. Cobo was treated by another psychiatrist, who prescribed an antidepressant medication which improved Dr. Cobo's condition. At the time of trial, Dr. Cobo was in poor condition and testified by video deposition.

At trial, Dr. John Monroe, plaintiff's expert witness in the field of psychiatry, testified that Dr. Cobo was suffering from major depression, which was a "biologic disregulation" that has to do with "chemical imbalances." Dr. Monroe also testified that there is no relationship between Dr. Cobo's homosexual activity and the treatment rendered for his depression. Dr. Monroe further testified that he was aware of no medical literature which indicates that major depression contributes to homosexual activity.

On 20 December 1991, Dr. Cobo and his wife, Virginia Cobo, filed a complaint against defendant seeking damages for physical injury, psychological injury, emotional distress, loss of standing in the medical community and damage to his relationship with his family. Plaintiffs alleged that defendant was negligent in that he "failed to prescribe appropriate medications"; "continued to treat Michael Cobo with psychotherapy when he knew, or ought to have known, that it was either an ineffective or less effective method of treating Michael Cobo's psychiatric condition"; and "failed to keep notes on his sessions with Dr. Cobo in order to follow the course and effect, or lack thereof, of his therapy."

Defendant filed his answer and asserted as an affirmative defense that Dr. Cobo was contributorily negligent. Specifically, in this regard, defendant alleged that Dr. Cobo "voluntarily sought and continued with psychoanalytic treatment for his condition over a period

of several years when he knew or should have known that there were a variety of other treatments available which were not psychoanalytically based"; "deliberately, intentionally, recklessly, carelessly and knowingly engage[d] in homosexual activities and alcohol and substance abuse which exposed him to physical, psychological, social and professional injury"; and "failed and refused to seek specialized medical treatment for his HIV."

At the charge conference, defendant requested that the trial court instruct the jury on contributory negligence, but this was denied. The trial court submitted the following single issue of negligence to the jury: "Was the plaintiff . . . injured by the negligence of the defendant?" The trial court instructed the jury to answer this issue "yes" if it determined that Dr. Cobo had met his burden of proving *either* negligent diagnosis *or* negligent treatment. The jury thus rendered a general verdict answering "yes" as to this one liability issue. The trial court also instructed on the statute of limitations for personal injury and on damages, but these issues are not before this Court.

We hold that in light of the evidence before the jury, the trial court should have instructed on the issue of contributory negligence. In this state, a plaintiff's right to recover in a personal injury action is barred upon a finding of contributory negligence. *Brewer v. Harris*, 279 N.C. 288, 298, 182 S.E.2d 345, 350 (1971). The trial court must consider any evidence tending to establish plaintiff's contributory negligence in the light most favorable to the defendant, and if diverse inferences can be drawn from it, the issue must be submitted to the jury. *Atkins v. Moye*, 277 N.C. 179, 184, 176 S.E.2d 789, 793 (1970). If there is more than a scintilla of evidence that plaintiff is contributorily negligent, the issue is a matter for the jury, not for the trial court. *Boyd v. Wilson*, 269 N.C. 728, 730, 153 S.E.2d 484, 486 (1967). Therefore, any evidence that Dr. Cobo was contributorily negligent in that he failed to use ordinary care to protect himself from the asserted injury, or that his behavior was a proximate cause of his injury, would dictate the submission of this issue to the jury.

This Court has held that "[i]n order for a contributory negligence issue to be presented to the jury, the defendant must show that plaintiff's injuries were proximately caused by his own negligence." *McGill v. French*, 333 N.C. 209, 217, 424 S.E.2d 108, 113 (1993). "[I]t is not necessary that plaintiff be *actually aware* of the unreasonable danger of injury to which his conduct exposes him. Plaintiff may be contributorily negligent if his conduct ignores unreasonable risks or

dangers which would have been apparent to a prudent person exercising ordinary care for his own safety." *Smith v. Fiber Controls Corp.*, 300 N.C. 669, 673, 268 S.E.2d 504, 507 (1980).

We hold that the record in the case *sub judice* provides substantial evidence from which the jury could have determined that Dr. Cobo's injuries were proximately caused by his own negligence, including ignoring and actually initiating unreasonable dangers which would have been apparent to an ordinary, prudent person. The evidence indicates that Dr. Cobo's only physical injury was AIDS, which was proximately caused by engaging in unprotected homosexual intercourse, and which he admits he contracted because his "judgment at that time was clouded and poor and self-destructive." Evidence that Dr. Cobo's conduct was unreasonably dangerous includes: his repeated refusal to follow defendant's advice with regard to his continued unprotected homosexual intercourse, his alcohol and drug abuse; and his substantial delay in seeking treatment for HIV. Further evidence of Dr. Cobo's negligence includes the indicated restrictions placed on treatment in refusing to allow defendant to prescribe medication for the chronic depression and in refusing to allow defendant to take notes during the treatment sessions. Additionally, as a highly educated medical doctor and infectious disease expert, Dr. Cobo was actually aware that his unprotected homosexual conduct was unreasonably dangerous.

Expert testimony, although useful, is not needed in all medical malpractice cases to establish proximate causation on the issue of contributory negligence when the jury, based on its own common knowledge and experience, is able to understand and judge the patient's actions. *McGill*, 333 N.C. at 219, 424 S.E.2d at 114. In *McGill*, this Court noted that a patient has an active responsibility for his own care and well-being. *Id.* at 220, 424 S.E.2d at 115. The Court held that a patient's failure to keep his appointments and failure to report symptoms constituted sufficient evidence of negligence for a jury to find these actions were the proximate cause of his injuries. *Id.* Likewise, in this case, the jury could have reasonably determined, based on application of its own common knowledge and the expert testimony, that the indicated restrictions Dr. Cobo placed on his treatment, his unremitting alcohol and drug abuse, his actions in ignoring and contravening his doctor's recommendations to seek treatment for his HIV status for three years and his continued unprotected homosexual conduct constituted sufficient evidence that Dr. Cobo's actions were negligent and contributed to and proximately

caused each of the injuries of which he complained, particularly his physical injury.

Plaintiff contends that Dr. Cobo's actions in this regard do not constitute a proper factual basis for the submission of the issue of contributory negligence to the jury. She contends that Dr. Cobo's alcohol abuse, drug abuse and unprotected homosexual conduct occurred subsequent to the alleged misdiagnosis and implementation of treatment and were part and parcel of the condition for which he sought treatment. Therefore, plaintiff contends, Dr. Cobo's injury could have been avoided if he had been correctly diagnosed and appropriate treatment had been initiated by defendant. Contributory negligence as a defense is inapplicable "where a patient's conduct provides the occasion for care or treatment that, later, is the subject of a malpractice claim, or where the patient's conduct contributes to an illness or condition for which the patient seeks the care or treatment on which a subsequent medical malpractice [claim] is based." David M. Harney, *Medical Malpractice* § 24.1, at 564 (3d ed. 1993). However, in the case *sub judice*, the evidence clearly indicates that the activities of Dr. Cobo asserted as contributory negligence took place prior to and contemporaneously with defendant's treatment and that Dr. Cobo directly contravened defendant's specific advice during the course of treatment. Further, we find no evidence that Dr. Cobo's malady, AIDS, was in any way caused by depression, the condition for which Dr. Cobo sought treatment from defendant.

The evidence shows Dr. Cobo had a history of depression; sought treatment from defendant for this condition; and consistent with prior diagnosis and treatment, was treated for dysthymia, a form of depression. The treatment rendered by defendant for dysthymia had absolutely no connection to Dr. Cobo's AIDS, which ultimately caused his death. Plaintiff's own expert, Dr. Monroe, admitted that homosexual conduct is unrelated to depression and that he was aware of no medical literature linking these conditions. Furthermore, there is no evidence that Dr. Cobo's unprotected homosexual activities were caused by, or related to, his depression. Dr. Cobo testified that he began having homosexual relations at the age of twenty and engaged in unprotected homosexual relations for more than ten years before he sought defendant's treatment. Dr. Cobo admitted that his contraction of AIDS was caused by his own conduct, and he told defendant that he thought his unprotected sex with a drug-addicted prostitute in a San Francisco bathhouse had probably caused his infection. Dr. Cobo further acknowledged that he engaged in unpro-

tected homosexual sex "easily on a monthly basis" in the early 1980s and that it takes only "one time" to contract AIDS. In *McGill,* this Court concluded that passive conduct by the plaintiff in failing to keep his appointments was sufficient to constitute contributory negligence. *McGill,* 333 N.C. at 220, 424 S.E.2d at 115. In the instance case, Dr. Cobo's conduct was clearly active and related directly to his physical complaint. While the record here does not show, and we thus cannot speculate, whether the verdict as to defendant's negligence was based on diagnosis or treatment or both, we conclude the record does show evidence of Dr. Cobo's conduct in both areas sufficient to require an instruction on and submission of the issue of contributory negligence to the jury.

Based upon the foregoing, there was sufficient evidence from which the jury could have inferred that Dr. Cobo's injuries were proximately caused by his own negligence. The trial court thus erred in refusing to instruct the jury on the issue of contributory negligence. Accordingly, the decision of the Court of Appeals is affirmed.

AFFIRMED.