IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA17-1335

 Filed: 4 December 2018

Cabarrus County, No. 16 CVS 303

THE ESTATE OF ANTHONY LAWRENCE SAVINO, Plaintiff,

 v.

THE CHARLOTTE-MECKLENBURG HOSPITAL AUTHORITY, a North Carolina
Hospital Authority, d/b/a CAROLINAS HEALTHCARE SYSTEM and CMC-
NORTHEAST, Defendant.

 Appeal by defendant from judgment entered 8 December 2016 and orders

entered 19 January 2017 by Judge Julia Lynn Gullett in Cabarrus County Superior

Court. Heard in the Court of Appeals 5 June 2018.

 Zaytoun Law Firm, PLLC, by Matthew D. Ballew, Robert E. Zaytoun, and John
 R. Taylor, and Brown, Moore & Associates, PLLC, by R. Kent Brown, Jon R.
 Moore, and Paige L. Pahlke, for plaintiff-appellee.

 Smith Moore Leatherwood LLP, by Matthew Nis Leerberg, and Matthew W.
 Krueger-Andes, and Horack, Talley, Pharr & Lowndes, P.A., by Kimberly
 Sullivan, for defendant-appellant.

 Bradley Arant Boult Cummings LLP, by Robert R. Marcus, for defendant-
 appellant.

 ARROWOOD, Judge.

 The Charlotte-Mecklenburg Hospital Authority (“defendant”), d/b/a Carolinas

Healthcare System and CMC-Northeast, appeals from judgment in favor of the

Estate of Anthony Lawrence Savino (“plaintiff”) and orders denying motions for a
 SAVINO V. THE CHARLOTTE-MECKLENBURG HOSP. AUTH.

 Opinion of the Court

judgment notwithstanding the verdict (“JNOV”) or for a new trial. For the following

reasons, we reverse in part, vacate in part, and grant a new trial on non-economic

damages.

 I. Background

 Anthony Lawrence Savino (“decedent”) died on the evening of 30 April 2012

after receiving medical treatment at CMC-Northeast earlier that afternoon in

response to complaints of chest pain, a headache, dizziness, and numbness and

tingling in his arms and hands.

 Specifically, Cabarrus County EMS responded to an emergency call regarding

decedent’s report of chest pain at approximately 1:32 p.m. on 30 April 2012. While

transporting decedent to CMC-Northeast, EMS treated decedent with aspirin and a

nitroglycerin tablet to relieve his chest pain. Decedent arrived at CMC-Northeast at

approximately 2:22 p.m. The admitting nurse at CMC-Northeast was told verbally

by the EMT of EMS’s treatment and the admitting nurse signed an “EMS Snapshot”

that detailed EMS’s treatment. The admitting nurse recorded decedent’s complaints

into his medical chart. Decedent was then examined by an emergency department

physician who reviewed decedent’s medical chart. The admitting nurse did not relay

to the emergency department physician the information provided by the EMT or

included in the “EMS Snapshot.” The emergency room physician documented

decedent’s complaints and ordered diagnostic tests. Results of decedent’s lab work

 -2-
 SAVINO V. THE CHARLOTTE-MECKLENBURG HOSP. AUTH.

 Opinion of the Court

were not unusual, leading the physician to report a “negative cardiac work-up.”

Decedent was discharged at approximately 5:31 p.m. with instructions to follow-up

with his primary care physician. Hours later, at approximately 10:58 p.m., decedent’s

widow found him unresponsive and immediately called EMS. Resuscitation efforts

were unsuccessful and decedent was pronounced dead at the scene.

 Almost two years after decedent’s death, plaintiff and decedent’s widow filed

an initial “Complaint for Medical Negligence” on 23 April 2014 against defendant,

the attending emergency room physician, and the attending emergency room

physician’s practice (the “2014 Complaint”). Defendant filed an answer with

affirmative defenses and a declaration not to arbitrate on 3 July 2014.

 On 6 January 2016, plaintiff filed a motion for leave to amend the 2014

Complaint “to conform to the evidence presented to date” “out of an abundance of

caution[.]” Plaintiff then filed a withdrawal of the motion for leave to amend the

complaint on 15 January 2016, followed by a notice of voluntary dismissal as to all

parties without prejudice to refile against defendant only on 19 January 2016.

Plaintiff and decedent’s widow refiled a “Complaint for Medical Negligence” against

defendant on 1 February 2016 (the “2016 Complaint”); the attending emergency room

physician and the physician’s practice were no longer named as defendants.1

 1 It appears that, at some point prior to the case being tried, decedent’s widow was dismissed
from the action as her name does not appear on the judgment or orders.

 -3-
 SAVINO V. THE CHARLOTTE-MECKLENBURG HOSP. AUTH.

 Opinion of the Court

Defendant filed an answer with affirmative defenses and a declaration not to

arbitrate on 5 April 2016.

 The case was tried before a jury in Cabarrus County Superior Court, the

Honorable Julia Lynn Gullett presiding, between 24 October 2016 and

15 November 2016.

 A disagreement between the parties arose during the trial court’s

consideration of pretrial motions when plaintiff asserted that “obviously this is a

medical negligence case” and explained that “there’s basically two contentions of

negligence in this case[.]” Plaintiff then asserted that it was proceeding on both

theories–negligence in the provision of medical care and negligence in the

performance of administrative duties. Defendant disagreed that there were two

theories of negligence in this case, asserting “[t]he complaint only alleges one theory

of negligence.”

 The parties continued to argue over this issue throughout the hearing of

pretrial motions and the trial. Defendant consistently maintained that plaintiff did

not plead a claim for administrative negligence. Plaintiff argued its general

negligence allegations pleaded in the 2016 Complaint were sufficient to assert both

theories of negligence and that defendant was on notice of the administrative

negligence claim from plaintiff’s designation of experts. The trial court allowed

plaintiff to proceed on both negligence theories.

 -4-
 SAVINO V. THE CHARLOTTE-MECKLENBURG HOSP. AUTH.

 Opinion of the Court

 At the close of plaintiff’s evidence, defendant moved for a directed verdict.

Among the grounds argued, defendant claimed plaintiff did not plead an

administrative negligence claim and that, to the extent the paragraphs added to the

2016 Complaint alleged administrative negligence, those portions were barred by the

statute of limitations. The trial court denied defendant’s motion for a directed verdict

without hearing argument from the plaintiff. Defendant later filed a renewed motion

for a directed verdict at the close of all the evidence on 10 November 2016. In the

motion, defendant asserted there was insufficient evidence and that any claim for

administrative negligence should be dismissed because it is barred by the statute of

limitations. The trial court again denied defendant’s motion.

 On 15 November 2016, the jury returned verdicts finding decedent’s death was

caused by defendant’s negligent provision of medical care and defendant’s negligent

performance of administrative duties. The jury found that plaintiff was entitled to

$680,000.00 in economic damages and $5,500,000.00 in non-economic damages. The

jury also found that defendant’s provision of medical care and defendant’s

performance of administrative duties were both in reckless disregard to the rights

and safety of others.

 On 8 December 2016, the trial court entered judgment on the jury verdicts

awarding plaintiff $6,130,000.00 in total damages, plus pre- and post-judgment

interest as allowed by law. On 12 December 2016, the trial court entered an

 -5-
 SAVINO V. THE CHARLOTTE-MECKLENBURG HOSP. AUTH.

 Opinion of the Court

additional order for costs awarding plaintiff $417,847.15 in pre-judgment interest and

$15,571.35 in costs.

 Following the entry of judgment, on 16 December 2016, defendant filed a

motion for a “JNOV” or for a new trial pursuant to Rule 50(b)(1) and Rule 59 of the

North Carolina Rules of Civil Procedure. Defendant moved the court to

 set aside the Verdict of the Jury and the Judgment entered
 thereon and to enter Judgment in accordance with the
 Defendant’s Motion for Directed Verdict submitted and
 argued by the Defendant at the close of the evidence offered
 by the Plaintiff and renewed at the close of all the evidence,
 or in the alternative, for a new trial on all issues, or in the
 alternative, for remittitur.

The motions were heard before Judge Gullett in Cabarrus County Superior Court on

19 January 2017 and the trial court entered separate orders denying defendant’s

motions for a JNOV and a new trial that same day.

 On 7 February 2017, defendant filed notice of appeal to this Court from the

8 December 2016 judgment and the 19 January 2017 orders.

 II. Discussion

 Defendant’s primary arguments on appeal concern the trial court’s denial of

its motion for a JNOV on the administrative negligence and medical negligence

claims. Alternatively, defendant argues the trial court erred in allowing the jury to

award damages for pain and suffering and in granting plaintiff’s motion for a directed

verdict on defendant’s contributory negligence defense.

 -6-
 SAVINO V. THE CHARLOTTE-MECKLENBURG HOSP. AUTH.

 Opinion of the Court

 1. JNOV

 Defendant contends the trial court erred in denying its motion for a JNOV

because (1) plaintiff failed to plead a claim for administrative negligence, (2) any

claim pleaded in the 2016 Complaint for administrative negligence was barred by the

applicable statute of limitations, and (3) plaintiff did not present sufficient evidence

of either administrative negligence or medical negligence.

 Generally, a motion for a directed verdict or for a JNOV raises the issue of the

legal sufficiency of the evidence. Thus, our appellate courts have explained that, “[o]n

appeal the standard of review for a JNOV is the same as that for a directed verdict,

that is whether the evidence was sufficient to go to the jury.” Tomika Invs., Inc. v.

Macedonia True Vine Pentecostal Holiness Church of God, Inc., 136 N.C. App. 493,

498-99, 524 S.E.2d 591, 595 (2000).

 In determining the sufficiency of the evidence to withstand
 a motion for a directed verdict, all of the evidence which
 supports the non-movant’s claim must be taken as true and
 considered in the light most favorable to the non-movant,
 giving the non-movant the benefit of every reasonable
 inference which may legitimately be drawn therefrom and
 resolving contradictions, conflicts, and inconsistencies in
 the non-movant’s favor.

Turner v. Duke Univ., 325 N.C. 152, 158, 381 S.E.2d 706, 710 (1989). Because of this

high standard, “[our Supreme Court] has . . . held that a motion for judgment

notwithstanding the verdict is cautiously and sparingly granted.” Bryant v.

Nationwide Mut. Fire Ins. Co., 313 N.C. 362, 369, 329 S.E.2d 333, 338 (1985).

 -7-
 SAVINO V. THE CHARLOTTE-MECKLENBURG HOSP. AUTH.

 Opinion of the Court

 “[Q]uestions concerning the sufficiency of the evidence to withstand a Rule 50

motion for directed verdict or judgment notwithstanding the verdict present an issue

of law[.] On appeal, this Court thus reviews an order ruling on a motion for directed

verdict or judgment notwithstanding the verdict de novo.” Austin v. Bald II, L.L.C.,

189 N.C. App. 338, 341-42, 658 S.E.2d 1, 4 (internal quotation marks and citation

omitted), disc. review denied, 362 N.C. 469, 665 S.E.2d 737 (2008). “Therefore, we

consider the matter anew and . . . freely substitute our judgment for that of the trial

court regardless of whether the trial court made findings of fact and conclusions of

law.” Hodgson Const., Inc. v. Howard, 187 N.C. App. 408, 412, 654 S.E.2d 7, 11 (2007)

(internal quotation marks and citation omitted), disc. review denied, 362 N.C. 509,

668 S.E.2d 28 (2008).

 A directed verdict or a JNOV is also appropriate if an affirmative defense is

established as a matter of law and there are no issues to be decided by the jury. See

Munie v. Tangle Oaks Corp., 109 N.C. App. 336, 341, 427 S.E.2d 149, 152 (1993)

(addressing a statute of limitations argument in a breach of contract case). We review

those questions of law which establish bases for a directed verdict or a JNOV de novo.

 A. Administrative Negligence

 Defendant’s first argument on appeal is that the trial court erred in denying

its motion for a JNOV on the administrative negligence claim because the claim was

not pleaded in plaintiff’s complaint. Consequently, defendant contends the trial court

 -8-
 SAVINO V. THE CHARLOTTE-MECKLENBURG HOSP. AUTH.

 Opinion of the Court

should not have allowed plaintiff to proceed on the administrative negligence claim

at trial. Plaintiff contends “corporate negligence” was pleaded all along.

 Rule 8 of the North Carolina Rules of Civil Procedure outlines the general rules

of pleadings. It provides as follows:

 A pleading which sets forth a claim for relief . . . shall
 contain

 (1) A short and plain statement of the claim sufficiently
 particular to give the court and the parties notice of
 the transactions, occurrences, or series of
 transactions or occurrences, intended to be proved
 showing that the pleader is entitled to relief, and

 (2) A demand for judgment for the relief to which he
 deems himself entitled. . . .

N.C. Gen. Stat. § 1A-1, Rule 8(a) (2017). Rule 8 further provides that “[n]o technical

forms of pleading . . . are required” and that “[e]ach averment of a pleading shall be

simple, concise, and direct.” N.C. Gen. Stat. § 1A-1, Rule 8(e)(1). Lastly, “[a]ll

pleadings shall be so construed as to do substantial justice.” N.C. Gen. Stat. § 1A-1,

Rule 8(f).

 This Court has described the general standard for civil pleadings under Rule 8

as “notice pleading.” That is, “[p]leadings should be construed liberally and are

sufficient if they give notice of the events and transactions and allow the adverse

party to understand the nature of the claim and to prepare for trial.” Haynie v. Cobb,

207 N.C. App. 143, 148-49, 698 S.E.2d 194, 198 (2010) (internal quotation marks and

citation omitted). “As we have consistently held, the policy behind notice pleading is

 -9-
 SAVINO V. THE CHARLOTTE-MECKLENBURG HOSP. AUTH.

 Opinion of the Court

to resolve controversies on the merits, after an opportunity for discovery, instead of

resolving them based on the technicalities of pleading.” Ellison v. Ramos, 130 N.C.

App. 389, 395, 502 S.E.2d 891, 895, disc. review denied, 349 N.C. 356, 517 S.E.2d 891

(1998). “While the concept of notice pleading is liberal in nature, a complaint must

nonetheless state enough to give the substantive elements of a legally recognized

claim . . . .” Highland Paving Co., LLC v. First Bank, 227 N.C. App. 36, 44, 742 S.E.2d

287, 293 (2013) (internal quotation marks and citation omitted).

 The question raised by defendant’s first argument on appeal is whether

plaintiff sufficiently pleaded a medical malpractice claim for administrative

negligence to put defendant on notice of the claim. We hold plaintiff did not

sufficiently plead administrative negligence.

 As detailed above, two complaints were filed in this case. For purposes of

addressing the sufficiency of the pleadings, it is plaintiff’s 2016 Complaint that is

relevant to our analysis. The parties, however, also refer to both the 2014 Complaint

and plaintiff’s motion to amend the 2014 Complaint in support of their respective

arguments regarding whether the 2016 Complaint sufficiently pleaded

administrative negligence. Specifically, defendant contends that all of the allegations

of negligence pleaded in the 2016 Complaint and the 2014 Complaint focused

exclusively on the clinical care provided by defendant to decedent. Consequently,

 - 10 -
 SAVINO V. THE CHARLOTTE-MECKLENBURG HOSP. AUTH.

 Opinion of the Court

defendant contends plaintiff asserted a medical negligence claim but not an

administrative negligence claim.

 Instead of responding to defendant’s distinction between medical negligence

claims and administrative negligence claims, plaintiff spends the majority of its

response asserting that both the 2016 Complaint and 2014 Complaint sufficiently

allege “corporate negligence.” Citing Estate of Ray v. Forgy, 227 N.C. App. 24, 744

S.E.2d 468, disc. review denied, 367 N.C. 271, 752 S.E.2d 475 (2013), plaintiff

acknowledges that “ ‘[t]here are fundamentally two kinds of [corporate negligence]

claims: (1) those relating to negligence in clinical care provided by the hospital

directly to the patient, and (2) those relating to negligence in the administration or

management of the hospital.’ ” 227 N.C. App. at 29, 744 S.E.2d at 471 (quoting Estate

of Waters v. Jarman, 144 N.C. App. 98, 101, 547 S.E.2d 142, 144, disc. review denied,

354 N.C. 68, 553 S.E.2d 213 (2001)). Nevertheless, plaintiff’s argument does not focus

on whether it has pleaded a claim for administrative negligence. Plaintiff instead

argues that, “under North Carolina law, to state a valid claim for corporate

negligence, a plaintiff need only allege the hospital breached the applicable standard

of care based on any one of the many clinical or administrative duties owed by the

hospital.” (Emphasis in plaintiff’s argument). During oral argument before this

Court, plaintiff consistently repeated its argument that it sufficiently pleaded

“corporate negligence.”

 - 11 -
 SAVINO V. THE CHARLOTTE-MECKLENBURG HOSP. AUTH.

 Opinion of the Court

 It is not clear from plaintiff’s argument on appeal whether plaintiff fully

comprehends defendant’s argument or the distinction between types of medical

malpractice actions in N.C. Gen. Stat. § 90-21.11.

 Prior to 2011, “medical malpractice action” was defined in our General Statutes

as a “civil action for damages for personal injury or death arising out of the furnishing

or failure to furnish professional services in the performance of medical, dental or

other health care by a health care provider.” N.C. Gen. Stat. § 90-21.11 (2009). The

term “health care provider” was defined to include a hospital. Id. Applying these

definitions, this Court recognized that a hospital could be held liable for medical

malpractice where claims of corporate negligence arose out of clinical care provided

by the hospital to a patient. Estate of Waters, 144 N.C. App. at 101, 547 S.E.2d at

144-45.

 In 2011, the General Assembly expanded the definition of “medical malpractice

action” in N.C. Gen. Stat. § 90-21.11 to include civil actions against a hospital for

damages for personal injury or death arising out of the hospital’s breach of

administrative or corporate duties to patients. See 2011 N.C. Sess. Laws ch. 400, § 5

(retaining the previous definition outlining medical negligence claims as subdivision

(a) and adding subdivision (b) to incorporate administrative negligence claims). In

full, the definition of “medical malpractice action” in N.C. Gen. Stat. § 90-21.11 now

includes either of the following:

 - 12 -
 SAVINO V. THE CHARLOTTE-MECKLENBURG HOSP. AUTH.

 Opinion of the Court

 a. A civil action for damages for personal injury or death
 arising out of the furnishing or failure to furnish
 professional services in the performance of medical,
 dental, or other health care by a health care provider.

 b. A civil action against a hospital, a nursing home
 licensed under Chapter 131E of the General Statutes,
 or an adult care home licensed under Chapter 131D of
 the General Statutes for damages for personal injury or
 death, when the civil action (i) alleges a breach of
 administrative or corporate duties to the patient,
 including, but not limited to, allegations of negligent
 credentialing or negligent monitoring and supervision
 and (ii) arises from the same facts or circumstances as
 a claim under sub-subdivision a. of this subdivision.

N.C. Gen. Stat. § 90-21.11(2) (2017). The term “health care provider” continues to

include a hospital following the amendments. See N.C. Gen. Stat. § 90-21.11(1)(b).

 This appears to be the first case deciding the pleading requirements for

administrative negligence as a malpractice action following the 2011 amendments to

the statute. However, we do not perceive that the legislature intended to create a new

cause of action by the 2011 amendment, but rather intended to re-classify

administrative negligence claims against a hospital as a medical malpractice action

so that they must meet the pleading requirements of a medical malpractice action

rather than under a general negligence theory.

 Upon review of the amended N.C. Gen. Stat. § 90-21.11, we now reiterate what

plaintiff has acknowledged this Court explained in Estate of Ray, “[t]here are

fundamentally two kinds of [corporate negligence] claims: (1) those relating to

negligence in clinical care provided by the hospital directly to the patient, and (2)

 - 13 -
 SAVINO V. THE CHARLOTTE-MECKLENBURG HOSP. AUTH.

 Opinion of the Court

those relating to negligence in the administration or management of the hospital.”

227 N.C. App. at 29, 744 S.E.2d at 471 (internal quotation marks and citations

omitted). Following the 2011 amendments to N.C. Gen. Stat. § 90-21.11, both types

of corporate negligence claims are considered medical malpractice actions.

 In this case, defendant’s argument is not that plaintiff failed to allege corporate

negligence, as plaintiff frames the issue in its response. Defendant contends only

that plaintiff failed to allege breaches of administrative duties necessary to plead an

administrative negligence claim under N.C. Gen. Stat. § 90-21.11(2)(b).

 This Court has explained that

 [a] plaintiff in a medical malpractice action may proceed
 against a hospital . . . under two separate and distinct
 theories-respondeat superior (charging it with vicarious
 liability for the negligence of its employees, servants or
 agents), or corporate negligence (charging the hospital with
 liability for its employees’ violations of duties owed directly
 from the hospital to the patient).”

Clark v. Perry, 114 N.C. App. 297, 311-12, 442 S.E.2d 57, 65 (1994) (internal citations

omitted) (emphasis in original). In the 2016 Complaint, plaintiff makes clear in

paragraph 3 that

 [a]ll allegations contained herein against said corporation
 also refer to and include the principals, agents, employees
 and/or servants of said corporation, either directly or
 vicariously, under the principles of corporate liability,
 apparent authority, agency, ostensible agency and/or
 respondeat superior and that all acts, practices and
 omissions of [d]efendant’s employees are imputed to their
 employer, [defendant].

 - 14 -
 SAVINO V. THE CHARLOTTE-MECKLENBURG HOSP. AUTH.

 Opinion of the Court

Plaintiff then summarizes the “medical events occasioning [the] Complaint” in

paragraph 6 and specifically identifies the following alleged negligent acts of

defendant in paragraph 7:

 Defendant, including by and through its agents, servants
 and assigns, including its nursing staff, was negligent in
 its care of [decedent] in that it, among other things:

 a. Failed to timely and adequately assess, diagnose,
 monitor and treat the conditions of [decedent] so as
 to render appropriate medical diagnosis and
 treatment of his symptoms;

 b. Failed to properly advise [decedent] of additional
 medical and pharmaceutical courses that were
 appropriate and should have been considered,
 utilized, and employed to treat [decedent’s] medical
 condition prior to discharge;

 c. Failed to timely obtain, utilize and employ proper,
 complete and thorough diagnostic procedures in the
 delivery of appropriate medical care to [decedent];

 d. Failed to exercise due care, caution and
 circumspection in the diagnosis of the problems
 presented by [decedent];

 e. Failed to exercise due care, caution and
 circumspection in the delivery of medical and
 nursing care to [decedent];

 f. Failed to adequately evaluate [decedent’s]
 response/lack of response to treatment and report
 findings;

 g. Failed to follow accepted standards of medical care
 in the delivery of care to [decedent];

 - 15 -
 SAVINO V. THE CHARLOTTE-MECKLENBURG HOSP. AUTH.

 Opinion of the Court

 h. Failed to use their best judgment in the care and
 treatment of [decedent];

 i. Failed to exercise reasonable care and diligence in
 the application of his/her/their knowledge and skill
 to [decedent’s] care;

 j. Failed to recognize, appreciate and/or react to the
 medical status of [decedent] and to initiate timely
 and appropriate intervention, including but not
 limited to medical testing, physical examination
 and/or appropriate medical consultation;

 k. Failed to use their best judgment in the care and
 treatment of [decedent];

 l. Failed to provide health care in accordance with the
 standards of practice among members of the same
 health care professions with similar training and
 experience situated in the same or similar
 communities at the time the health care was
 rendered to [decedent.]

These allegation of negligent acts mirror the allegations in the 2014 Complaint.

 It is evident from a review of these allegations that the allegations identify

failures in the clinical care, either diagnosis or treatment, provided to decedent by

defendant by and thru its employees. The allegations do not implicate defendant’s

administrative duties.

 In addition to arguing that the above allegations put defendant on notice of

“corporate negligence” claims, plaintiff contends the 2016 Complaint “went further”

than the 2014 Complaint “by alleging [d]efendant had Chest Pain Center protocols

reflecting the standard of care that were not followed[.]” The three factual allegations

 - 16 -
 SAVINO V. THE CHARLOTTE-MECKLENBURG HOSP. AUTH.

 Opinion of the Court

included in paragraph 6 of the 2016 Complaint that were absent from the

corresponding section of the 2014 Complaint are as follows:

 l. Prior to the above events, [defendant] had submitted an
 application to the Society of Chest Pain Centers (a/k/a
 the Society for Cardiovascular Patient Care) for CMC-
 Northeast to gain for [sic] accreditation as a Chest Pain
 Center and was approved for such accreditation at the
 time of the events complained of.

 m. As part of the Society of Chest Pain Centers
 accreditation process [defendant] had submitted an
 application to the Society of Chest Pain Centers that it
 employed certain protocols, clinical practice guidelines
 and procedures in the care of patients presenting with
 chest pain complaints.

 n. The protocols, clinical practice guidelines and
 procedures contained in the CMC-North[e]ast
 accreditation application replicated the existing
 standards of practice for medical providers and
 hospitals in the same care profession with similar
 training and experience situated in the same or similar
 communities with similar resources at the time of the
 alleged events giving rise to this cause of action.

 Although the development, implementation, and review of protocols, practice

guidelines, and procedures for purposes of accreditation implicate defendant’s

administrative duties, plaintiff did not include any allegations of negligence

associated with those duties in the 2016 Complaint. As stated above, the negligent

acts alleged in the 2016 Complaint are the same as those included in the 2014

Complaint, which did not include the factual allegations regarding defendant’s

administrative duties related to accreditation as a Chest Pain Center.

 - 17 -
 SAVINO V. THE CHARLOTTE-MECKLENBURG HOSP. AUTH.

 Opinion of the Court

 Plaintiff asserts that the negligence allegation in paragraph 7(l) of the 2016

Complaint, when read in conjunction with the factual allegations about the Chest

Pain Center application and accreditation, is sufficient to put defendant on notice of

any corporate negligence claims. Again, we disagree. Something more specific is

necessary to put defendant on notice of an administrative negligence claim.

 Paragraph 7(l) is a general allegation that defendant failed to provide health

care in accordance with the standards of practice. The failure to follow protocols in

this instance goes to the clinical care provided to decedent. The standards of health

care for medical negligence and administrative negligence claims are set forth in N.C.

Gen. Stat. § 90-21.12(a). Although the standards outlined in N.C. Gen. Stat. § 90-

21.12(a) for medical negligence claims under N.C. Gen. Stat. § 90-21.11(2)(a) (“the

care of such health care provider was not in accordance with the standards of practice

among members of the same health care profession with similar training and

experience situated in the same or similar communities under the same or similar

circumstances at the time of the alleged act giving rise to the cause of action”) and

administrative negligence claims under N.C. Gen. Stat. § 90-21.11(2)(b) (“the action

or inaction of such health care provider was not in accordance with the standards of

practice among similar health care providers situated in the same or similar

communities under the same or similar circumstances at the time of the alleged act

giving rise to the cause of action”) are similar, there are differences. (Emphasis on

 - 18 -
 SAVINO V. THE CHARLOTTE-MECKLENBURG HOSP. AUTH.

 Opinion of the Court

differences added). Paragraph 7(l) refers to care provided by defendant falling below

“the standards of practice among members of the same health care professions with

similar training and experience[,]” in keeping with the standard of health care for

medical negligence provided in N.C. Gen. Stat. § 90-21.12(a).

 We further note that this is not a case where it appears plaintiff did not

understand how to plead an administrative negligence claim. It is clear from

plaintiff’s motion for leave to amend the 2014 Complaint and the attached proposed

amended complaint filed on 6 January 2016 that plaintiff knew how to plead an

administrative negligence claim. In those filings, plaintiff sought to add the following

allegations to the negligent acts already listed in the 2014 Complaint:

 m. Failed to provide and/or require adequate training,
 instruction, monitoring, compliance, coordination
 among providers, and supervision of its employees and
 contracted medical staff members concerning
 utilization, implementation, and compliance with its
 written protocols, standing orders, guidelines,
 procedures, and/or policies.

 n. Failed to enforce and/or follow its written protocols,
 standing orders, guidelines, procedures and/or policies.

 o. Failed to establish, design, and implement clear,
 explicit and effective protocols, standing orders,
 guidelines, procedures and/or policies relating to
 communication among employees, contracted medical
 staff members, and EMS personnel.

 p. Failed to properly train, supervise, restrict, and monitor
 emergency department personnel with known
 impairments critical to job performance and patient

 - 19 -
 SAVINO V. THE CHARLOTTE-MECKLENBURG HOSP. AUTH.

 Opinion of the Court

 care.

 q. Failed to establish, design, and implement clear,
 explicit, and effective written protocols, standing
 orders, guidelines, procedures and/or policies to ensure
 immediate collection, transfer to treating medical
 providers, availability, and retention of verbal and
 written information provided by EMS personnel.

 r. Misled the consuming public and EMS personnel thus
 causing injury to . . . decedent by holding itself out to be
 a chest pain center and failing to follow its stated ACS
 protocol for patients in the emergency department.

These proposed amendments to plaintiff’s 2014 Complaint clearly allege

administrative negligence by defendant and are the type of allegations necessary to

plead an administrative negligence claim. However, plaintiff withdrew the motion

for leave to amend the 2014 Complaint, took a voluntary dismissal on the 2014

Complaint, and did not plead any of these allegations of administrative negligence in

the 2016 Complaint.

 Plaintiff also asserts that, apart from the 2016 Complaint, discovery requests

served after the 2014 Complaint and a supplemental designation of experts put

defendant on notice of the administrative negligence claim. While those documents

do indicate there may be evidence pertinent to administrative negligence, they do not

take the place of a pleading. The discovery requests and the supplemental

designation of experts were filed prior to the 2016 Complaint. Thus, if plaintiff was

aware of evidence of administrative negligence and wanted to proceed on that theory,

it could have included specific allegations in the 2016 Complaint. On appeal, our

 - 20 -
 SAVINO V. THE CHARLOTTE-MECKLENBURG HOSP. AUTH.

 Opinion of the Court

Courts have refused to allow plaintiffs to assert negligence claims not pleaded in the

complaint, holding that “pleadings have a binding effect as to the underlying theory

of plaintiff’s negligence claim.” Anderson v. Assimos, 356 N.C. 415, 417, 572 S.E.2d

101, 102 (2002); see also Sturgill v. Ashe Mem’l Hosp., Inc., 186 N.C. App. 624, 630,

652 S.E.2d 302, 306-307 (2007), disc. review denied, 362 N.C. 180, 658 S.E.2d 662

(2008). The same holds true at the trial court level under Rule 8.

 While labels of legal theories do not control, see Haynie, 207 N.C. App. at 149,

698 S.E.2d at 198, the 2016 Complaint, labeled “Complaint for Medical Negligence,”

included only allegations of medical negligence. Those negligence allegations were

not sufficient to put defendant on notice of a claim of administrative negligence.

Thus, we hold the trial court erred in allowing plaintiff to proceed on an

administrative negligence theory in the medical malpractice action.

 B. Statute of Limitations

 Defendant also argues that the trial court erred in denying its motion for JNOV

on the administrative negligence claim because it was barred by the statute of

limitations. Assuming arguendo plaintiff sufficiently pleaded an administrative

negligence claim in the 2016 Complaint, we agree the claim was time barred.

 Generally, there is a three-year statute of limitations period for any medical

malpractice action. N.C. Gen. Stat. § 1-15(c) (2017). Defendant, however, argues the

applicable statute of limitations in this case is the two-year limitations period for

 - 21 -
 SAVINO V. THE CHARLOTTE-MECKLENBURG HOSP. AUTH.

 Opinion of the Court

bringing a wrongful death claim based on negligence. See N.C. Gen. Stat. § 1-53(4)

(2017). This Court has held that a wrongful death action based on medical

malpractice must be brought within two years of a decedent’s death. See King v. Cape

Fear Mem’l Hosp., Inc., 96 N.C. App. 338, 341, 385 S.E.2d 812, 814 (1989) (holding

discovery exception for latent injuries contained in N.C. Gen. Stat. § 1-15(c) did not

apply to a wrongful death action based upon medical malpractice), disc. review

denied, 326 N.C. 265, 389 S.E.2d 114 (1990). Regardless of whether defendant

pleaded a wrongful death claim in addition to a medical malpractice claim in this

case, see Udzinski v. Lovin, 159 N.C. App. 272, 275, 583 S.E.2d 648, 650-51 (2003)

(explaining that although not perfectly worded, the plaintiff had sufficiently alleged

a wrongful death claim in addition to and based on the underlying medical

malpractice claim), both limitations periods expired prior to plaintiff’s filing of the

2016 Complaint on 1 February 2016, almost four years after decedent’s death on

30 April 2012. That, however, does not end our inquiry.

 Rule 41(a) of the North Carolina Rules of Civil Procedure provides that “[i]f an

action commenced within the time prescribed therefor, or any claim therein, is

dismissed without prejudice . . . a new action based on the same claim may be

commenced within one year after such dismissal . . . .” N.C. Gen. Stat. § 1A-1, Rule

41(a)(1) (2017). This Court has explained that “the relation-back provision in Rule

41(a)(1) only applies to those claims in the second complaint that were included in

 - 22 -
 SAVINO V. THE CHARLOTTE-MECKLENBURG HOSP. AUTH.

 Opinion of the Court

the voluntarily-dismissed first complaint.” Williams v. Lynch, 225 N.C. App. 522,

526, 741 S.E.2d 373, 376 (2013).

 Plaintiff filed the 2014 Complaint on 23 April 2014, less than two years after

decedent’s death and within any applicable statute of limitations. Plaintiff then took

a voluntary dismissal of the 2014 Complaint on 19 January 2016, just weeks before

filing the 2016 Complaint. The timing of plaintiff’s filing of the 2014 Complaint and

plaintiff’s subsequent voluntary dismissal and filing of the 2016 Complaint allows for

the possibility that an administrative negligence claim in the 2016 Complaint is

timely if it relates back to the 2014 Complaint.

 However, assuming arguendo the 2016 Complaint pleads an administrative

negligence claim, that claim does not relate back to the 2014 Complaint. As detailed

above, this Court made clear in Estate of Ray that medical negligence and

administrative negligence are distinct claims. 227 N.C. App. at 29, 744 S.E.2d at 471

(“[t]here are fundamentally two kinds of [corporate negligence] claims: (1) those

relating to negligence in clinical care provided by the hospital directly to the patient,

and (2) those relating to negligence in the administration or management of the

hospital.”). All of the factual and negligence allegations pleaded in the 2014

Complaint relate to the medical care provided by defendant to decedent. There are

no allegations of breaches of defendant’s administrative duties.

 - 23 -
 SAVINO V. THE CHARLOTTE-MECKLENBURG HOSP. AUTH.

 Opinion of the Court

 Apart from the 2014 Complaint, plaintiff’s own statements show that it could

not have pleaded administrative negligence in the 2014 Complaint. As noted above,

plaintiff’s motion for leave to amend the complaint and the attached proposed

amended complaint filed on 6 January 2016 include the necessary allegations to

plead a claim of administrative negligence. In the motion, plaintiff admits that it

 had no way of knowing about the manner in which [CMC-
 Northeast’s] emergency department operated, [CMC-
 Northeast’s] failure to provide and/or require adequate
 training, instruction, monitoring, compliance, coordination
 among providers, and supervision of its employees and
 contracted medical staff members concerning utilization,
 implementation, and compliance with its written protocols,
 standing orders, guidelines, procedures, and/or policies,
 and the issues concerning [the nurse who received
 defendant at the hospital].

Plaintiff further states in the motion that it sought to continue the case in

November 2015 “to explore ‘. . . new areas of negligence not previously known to

[p]laintiff . . .’ and to perhaps seek ‘amendment to [p]laintiff’s [c]omplaint.’ ”

 These statements by plaintiff in the motion for leave to amend the 2014

Complaint are noteworthy because they indicate plaintiff did not have enough

information to plead an administrative negligence claim at the time plaintiff filed the

2014 Complaint. Since plaintiff did not plead an administrative negligence claim in

the 2014 Complaint, any administrative negligence claim in the 2016 Complaint did

not relate back to the 2014 Complaint and, therefore, is time barred.

 - 24 -
 SAVINO V. THE CHARLOTTE-MECKLENBURG HOSP. AUTH.

 Opinion of the Court

 Plaintiff argues this case is similar to Haynie, in which this Court rejected the

defendant’s argument that a negligent entrustment claim, which was pleaded in a

second complaint filed after a voluntary dismissal of the original complaint, should

be dismissed because it was not based on the claims in the original complaint. 207

N.C. App. at 149, 698 S.E.2d at 199. Plaintiff contends that defendant has asked this

Court to do what it refused to do in Haynie–to ignore the original complaint and to

instead focus on proposed amendments to the complaint. Id. at 150, 698 S.E.2d at

199. The present case is distinguishable. In Haynie, this Court held “[the] plaintiff

did allege the necessary elements to put [the] defendant . . . on notice of the claim of

negligent entrustment, even if plaintiff mislabeled or failed to label the claim.” Id. at

149-50, 698 S.E.2d at 199. A review of plaintiff’s motion to amend and the attached

proposed amended complaint in this case only highlights what is evident from a

review of the 2014 Complaint—there are no allegations of breaches of defendant’s

administrative duties in the 2014 Complaint to put defendant on notice of an

administrative negligence claim.

 C. Sufficiency of the Evidence

 Defendant next argues that even if an administrative negligence claim was

properly pleaded and timely, the trial court erred in denying its motion for a JNOV

on both the administrative negligence claim and the medical negligence claim

because plaintiff failed to present sufficient evidence to submit the claims to the jury.

 - 25 -
 SAVINO V. THE CHARLOTTE-MECKLENBURG HOSP. AUTH.

 Opinion of the Court

Having determined the administrative negligence claim was not properly pleaded, we

only address defendant’s argument as it relates to medical negligence.

 As stated above, “[a] civil action for damages for personal injury or death

arising out of the furnishing or failure to furnish professional services in the

performance of medical . . . care by a health care provider” is defined as a medical

malpractice action in N.C. Gen. Stat. § 90-21.11(2)(a). “In [such] a medical

malpractice action, a plaintiff has the burden of showing ‘(1) the applicable standard

of care; (2) a breach of such standard of care by the defendant; (3) the injuries suffered

by the plaintiff were proximately caused by such breach; and (4) the damages

resulting to the plaintiff.’ ” Purvis v. Moses H. Cone Mem’l Hosp. Serv. Corp., 175

N.C. App. 474, 477, 624 S.E.2d 380, 383 (2006) (quoting Weatherford v. Glassman,

129 N.C. App. 618, 621, 500 S.E.2d 466, 468 (1998)). Here, defendant only challenges

the sufficiency of the evidence to establish the standard of care for medical negligence.

 N.C. Gen. Stat. § 90-21.12 sets forth the appropriate standards of care in

medical malpractice actions. Pertinent to claims of medical negligence, the statute

provides:

 in any medical malpractice action as defined in [N.C. Gen.
 Stat. §] 90-21.11(2)(a), the defendant health care provider
 shall not be liable for the payment of damages unless the
 trier of fact finds by the greater weight of the evidence that
 the care of such health care provider was not in accordance
 with the standards of practice among members of the same
 health care profession with similar training and experience
 situated in the same or similar communities under the same

 - 26 -
 SAVINO V. THE CHARLOTTE-MECKLENBURG HOSP. AUTH.

 Opinion of the Court

 or similar circumstances at the time of the alleged act giving
 rise to the cause of action[.]

N.C. Gen. Stat. § 90-21.12(a) (emphasis added). “Because questions regarding the

standard of care for health care professionals ordinarily require highly specialized

knowledge, the plaintiff must establish the relevant standard of care through expert

testimony.” Smith v. Whitmer, 159 N.C. App. 192, 195, 582 S.E.2d 669, 671-72 (2003).

 In this case, plaintiff presented Dr. Dan Michael Mayer as an expert to testify

regarding the standard of care for medical negligence. Defendant contends that “Dr.

Mayer’s demonstrated lack of familiarity with the community standard of care

rendered him unqualified to testify regarding the standard of care for the medical

negligence claim.” We disagree with defendant’s characterization of Dr. Mayer’s

familiarity with the community standard of care.

 This Court has applied a highly deferential standard of review to evidentiary

rulings on expert testimony, explaining that

 [t]rial courts are afforded a wide latitude of discretion when
 making a determination about the admissibility of expert
 testimony. The trial court’s ruling on the qualifications of
 an expert or the admissibility of an expert’s opinion will not
 be reversed on appeal absent a showing of abuse of
 discretion. A trial court’s evidentiary ruling is not an abuse
 of discretion unless it was so arbitrary that it could not
 have been the result of a reasoned decision.

Kearney v. Bolling, 242 N.C. App. 67, 76, 774 S.E.2d 841, 848 (2015) (internal

quotation marks and citations omitted), disc. review denied, __ N.C. __, 783 S.E.2d

497 (2016).

 - 27 -
 SAVINO V. THE CHARLOTTE-MECKLENBURG HOSP. AUTH.

 Opinion of the Court

 This Court has explained that

 [a]n expert witness “testifying as to the standard of care” is
 not required “to have actually practiced in the same
 community as the defendant,” but “the witness must
 demonstrate that he is familiar with the standard of care
 in the community where the injury occurred, or the
 standard of care in similar communities.”

Id. (quoting Smith, 159 N.C. App. at 196, 582 S.E.2d at 672). “ ‘[O]ur law does not

prescribe any particular method by which a medical doctor must become familiar with

a given community. Book or Internet research may be a perfectly acceptable method

of educating oneself regarding the standard of medical care applicable in a particular

community.’ ” Robinson v. Duke Univ. Health Sys., Inc., 229 N.C. App. 215, 236, 747

S.E.2d 321, 336 (2013) (quoting Grantham v. Crawford, 204 N.C. App. 115, 119, 693

S.E.2d 245, 248-49 (2010)), disc. review denied, 367 N.C. 328, 755 S.E.2d 618 (2014).

 The “critical inquiry” in determining whether a medical
 expert’s testimony is admissible under the requirements of
 N.C. Gen. Stat. § 90-21.12 is “whether the doctor’s
 testimony, taken as a whole” establishes that he “is
 familiar with a community that is similar to a defendant's
 community in regard to physician skill and training,
 facilities, equipment, funding, and also the physical and
 financial environment of a particular medical community.”

Kearney, 242 N.C. App. at 76, 774 S.E.2d at 848 (quoting Pitts v. Nash Day Hosp.,

Inc., 167 N.C. App. 194, 197, 605 S.E.2d 154, 156 (2004), aff’d per curiam, 359 N.C.

626, 614 S.E.2d 267 (2005)). “According to our Supreme Court, ‘[a]ssuming expert

testimony is properly qualified and placed before the trier of fact, [N.C. Gen. Stat. §]

90-21.12 reserves a role for the jury in determining whether an expert is sufficiently

 - 28 -
 SAVINO V. THE CHARLOTTE-MECKLENBURG HOSP. AUTH.

 Opinion of the Court

familiar with the prevailing standard of medical care in the community.’ ” Grantham,

204 N.C. App. at 119, 693 S.E.2d at 248 (quoting Crocker v. Roethling, 363 N.C. 140,

150, 675 S.E.2d 625, 633 (2009) (Martin, J., concurring) (citing N.C. Gen. Stat. § 90-

21.12 (2007))).

 As stated above, plaintiff presented Dr. Mayer to testify as an expert about the

community standard of care for purposes of medical negligence. Dr. Mayer was

accepted by the trial court as an expert in emergency medicine in a hospital setting,

emergency nursing services, and chest pain protocols. While giving his background

in emergency medicine, Dr. Mayer testified that he most recently practiced

emergency medicine at Albany Medical Center and taught at Albany Medical College,

an accredited medical school, until he retired in 2014. Dr. Mayer further explained

that he continues to be involved in the field of emergency medicine by regularly

teaching in the emergency medicine residency program at Albany Medical College

and by teaching medical students at Albany Medical College.

 Regarding the standard of care, Dr. Mayer testified that he was familiar with

the standard of care at CMC-Northeast. Dr. Mayer explained that he “found . . .

[CMC-Northeast] was in many ways very similar to Albany Medical Center” because

they have “pretty much the same types of specialists for general specialty medical

problems[.]” Dr. Mayer opined that the community standard of care in Albany was

the same or very similar to the community standard of care expected in Concord and

 - 29 -
 SAVINO V. THE CHARLOTTE-MECKLENBURG HOSP. AUTH.

 Opinion of the Court

explained “[t]here would only be a small minority of patients, none of whom would fit

the characteristics of [decedent], that would be treated differently at [CMC-

Northeast] than would be treated at Albany Medical Center.” Dr. Mayer added that

he was familiar with the standard of care that applies to nurses in the emergency

department at CMC-Northeast because “[t]he types of duties that nurses have at

CMC[-]Northeast is exactly the same as the role of nurses at Albany Medical Center.”

 To establish a basis for Dr. Mayer’s familiarity with the standard of care and

to support his conclusions in this case, plaintiff questioned Dr. Mayer about the

materials he reviewed in preparation for the case. Dr. Mayer testified that he first

reviewed the record in this case which included decedent’s medical records from

30 April 2012 and the depositions of the attending emergency department physician,

the emergency department nurse who attended to decedent, the paramedic who

responded to the emergency calls, and other hospital employees and administrators.

Dr. Mayer also reviewed CMC-Northeast’s policies and procedures, including the

hospital’s application to become certified as a Chest Pain Center. Dr. Mayer

explained that he reviews these types of materials before he discusses the case with

the attorneys so that he “can give as objective a review of the care that was provided

as possible.” Dr. Mayer then advises whether there is a case or not based on the

standard of care, which Dr. Mayer further explained is “not perfect care,” but “what

a reasonably prudent physician under the same circumstances would do.”

 - 30 -
 SAVINO V. THE CHARLOTTE-MECKLENBURG HOSP. AUTH.

 Opinion of the Court

 Pertaining to the community standard of care in this case, Dr. Mayer testified

that he reviewed a lengthy demographics package, which he explained contained

information about “the characteristics of Cabarrus County and of Concord and of the

-- both the general demographics and also the medical issues, you know, what types

of physicians practice here, what are the different hospitals, how big are the hospitals,

how many patients do they see.” Dr. Mayer stated that it was important for him to

review this information because “I want to make sure that in fact what I’m testifying

to about the standard of practice in Cabarrus County, and specifically at [CMC-

Northeast], is something that I’m familiar with and that I can then testify truthfully

would be appropriate care and reasonable care.” Dr. Mayer acknowledged that there

are community standards of care and explained that the purpose of reading the

demographics package was to determine whether there were extenuating

circumstances that were relevant to the standard of care in Concord. Dr. Mayer also

indicated that he reviewed websites for Carolinas Healthcare System.

 Based on the information reviewed by Dr. Mayer about Concord and CMC-

Northeast, Dr. Mayer testified the community standard of care in this case was

similar to Albany Medical Center, where he worked and with which he was familiar.

 Citing this Court’s decision in Smith, 159 N.C. App. 192, 582 S.E.2d 669 (2003),

defendant contends Dr. Mayer’s testimony was insufficient to establish that he was

familiar with the relevant community standard of care because Dr. Mayer had never

 - 31 -
 SAVINO V. THE CHARLOTTE-MECKLENBURG HOSP. AUTH.

 Opinion of the Court

been to the area prior to offering testimony in this case; Dr. Mayer had never

practiced medicine in North Carolina, held a medical license in North Carolina, or

previously testified in North Carolina; Dr. Mayer’s familiarity was based on the

demographics package received for purposes of testifying; and because Dr. Mayer

noted differences between CMC-Northeast and Albany Medical Center and

unjustifiably compared the two. Defendant asserts the above argument in reference

to the community standard of care for administrative negligence, but subsequently

asserts that “[t]he same holds true with respect to [plaintiff’s] medical negligence

claim: Dr. Mayer’s demonstrated lack of familiarity with the community standard of

care rendered him unqualified to testify regarding the standard of care for the

medical negligence claim.” We are not convinced.

 In Smith, this Court held the trial court properly excluded testimony of the

plaintiff’s expert witness because the witness’ testimony was devoid of support for his

assertion that he was sufficiently familiar with the applicable standard of care. 159

N.C. App. at 196-97, 582 S.E.2d at 672-73. This Court explained that the witness

 stated that the sole information he received or reviewed
 concerning the relevant standard of care . . . was verbal
 information from [the] plaintiff’s attorney regarding “the
 approximate size of the community and what goes on
 there.” [The witness] could offer no further details . . .
 concerning the medical community, nor could he actually
 remember what plaintiff’s counsel had purportedly told
 him.

 - 32 -
 SAVINO V. THE CHARLOTTE-MECKLENBURG HOSP. AUTH.

 Opinion of the Court

Id. at 196-97, 582 S.E.2d at 672. Furthermore, the witness stated there was a

national standard of care and “that he could ‘comment on the standard of care as far

as a reasonably prudent orthopedic surgeon anywhere in the country regardless of

what [this particular] medical community . . . might do.’ ” Id. at 197, 582 S.E.2d at

672.2

 Unlike in Smith, Dr. Mayer’s testimony in this case was based on his review of

a lengthy demographics package, internet research conducted by Dr. Mayer on CMC-

Northeast, and Dr. Mayer’s comparison of the community to Albany Medical Center.

Plaintiff has cited many cases in which this Court has determined similar bases were

sufficient to demonstrate familiarity with the community standard of care. See i.e.

Kearney, 242 N.C. App. at 76-78, 774 S.E.2d at 848-49; Robinson, 229 N.C. App. at

235-36, 747 S.E.2d at 335-36; Day v. Brant, 218 N.C. App. 1, 6-7, 721 S.E.2d 238, 243-

44, disc. review denied, 366 N.C. 219, 726 S.E.2d 179 (2012).

 We agree the present case is governed by those cases cited by plaintiff and hold

the trial court did not abuse its discretion in determining Dr. Mayer was qualified to

testify as an expert to the community standard of care for medical negligence.

 2. New Trial

 2 Defendant also cites this Court’s unpublished decision in Barbee v. WHAP, P.A., __ N.C. App.
__, 803 S.E.2d 701, COA16-1154 (2017) (unpub.), available at 2017 WL 3481038, *7-11 (holding that
the plaintiff’s expert witness failed to demonstrate familiarity with the relevant community standard
of care after the witness testified during a deposition that he had never been to the area, knew nothing
about the hospital, knew nothing about the training and experience of the doctors at the hospital, and
did not know any doctors in the State).

 - 33 -
 SAVINO V. THE CHARLOTTE-MECKLENBURG HOSP. AUTH.

 Opinion of the Court

 In the event the trial court erred in denying its motion for a JNOV on

administrative negligence, but the trial court did not err in denying its motion for a

JNOV on medical negligence, defendant asserts a new trial is required on medical

negligence. Defendant argues that the evidence and the jury instructions for

administrative negligence and medical negligence were so “intermingled” that “the

jury’s determination on the medical negligence claim . . . was tainted by the trial

court’s error in allowing the administrative negligence claim to proceed at trial at

all.” We are not convinced a new trial is required.

 Defendant first takes issue with the inclusion of “implement” in the jury

instructions for medical negligence by arguing its inclusion “suggested to the jury

that it could find [defendant] liable for medical negligence based on administrative

negligence-related principles.” This is defendant’s only challenge to the jury

instructions.

 “[T]he trial court has wide discretion in presenting the issues to the jury . . . .”

Murrow v. Daniels, 321 N.C. 494, 499, 364 S.E.2d 392, 396 (1988). On appeal,

 this Court considers a jury charge contextually and in its
 entirety. The charge will be held to be sufficient if it
 presents the law of the case in such manner as to leave no
 reasonable cause to believe the jury was misled or
 misinformed. The party asserting error bears the burden
 of showing that the jury was misled or that the verdict was
 affected by an omitted instruction. Under such a standard
 of review, it is not enough for the appealing party to show
 that error occurred in the jury instructions; rather, it must
 be demonstrated that such error was likely, in light of the

 - 34 -
 SAVINO V. THE CHARLOTTE-MECKLENBURG HOSP. AUTH.

 Opinion of the Court

 entire charge, to mislead the jury.

Hammel v. USF Dugan, Inc., 178 N.C. App. 344, 347, 631 S.E.2d 174, 177 (2006)

(citations and quotation marks omitted).

 A review of the jury instructions shows that the trial court used “implement”

three times in the instructions for medical negligence, each time in a similar fashion.

The relevant portions of the trial court’s instructions are as follows:

 With respect to the first issue in this case, the plaintiff
 contends and the defendant denies that the defendant was
 negligent in one or more of the following ways. The first
 contention is that the hospital did not use its best judgment
 in the treatment and care of its patient in that the
 defendant did not adequately implement and/or follow
 protocols, processes, procedures and/or policies for the
 evaluation and management of chest pain patients in the
 emergency room on April 30th of 2012, in accordance with
 the standard of care. The second contention is that the
 hospital did not use its best judgment in the treatment and
 care of its patient, in that its employee, [the attending
 nurse], did not adequately collect and/or communicate to
 other health care providers pertinent medical information
 necessary for the care and treatment of [decedent] on April
 30th of 2012.

 The third contention is that the hospital did not use
 reasonable care and diligence in the application of its
 knowledge and skill to its patient’s care in that Carolinas
 Healthcare System did not adequately implement and/or
 follow the protocols, processes, procedures and/or policies
 for the evaluation and management of chest pain patients
 in the emergency room or emergency department on April
 30th of 2012. The fourth contention is that the hospital did
 not use reasonable care and diligence and the application
 of its knowledge and skill to its patient’s care in that its
 employee, [the attending nurse], did not adequately collect
 and/or communicate to other health care providers

 - 35 -
 SAVINO V. THE CHARLOTTE-MECKLENBURG HOSP. AUTH.

 Opinion of the Court

 pertinent medical information necessary for the treatment
 and care of [decedent] on April 30th of 2012.

 The fifth contention is that the hospital did not provide
 health care in accordance with the standards of practice
 among similar health care providers situated in the same
 or similar communities under the same or similar
 circumstances at the time the health care was rendered,
 and that the defendant did not adequately implement
 and/or follow the protocols, processes, procedures and/or
 policies in place in the emergency department on April
 30th of 2012.

 The sixth contention is that the hospital did not provide
 health care in accordance with the standards of practice
 among similar health care providers situated in the same
 or similar communities under the same or similar
 circumstances at the time the health care was rendered,
 and that its employee, [the attending nurse], did not
 adequately collect and/or communicate to other medical
 providers pertinent medical information necessary for the
 treatment and care of [decedent] on April 30th of 2012.
 (Emphasis added).

The trial court then went on to instruct as follows:

 With respect to the plaintiff’s first contention, a hospital
 has a duty to use its best judgment in the treatment and
 care of its patient. A violation of this duty is negligence.
 With respect to the plaintiff’s second contention, a nurse
 has a duty to use her best judgment in the treatment and
 care of her patient. A violation of this duty is negligence.
 With respect to the plaintiff’s third contention, a hospital
 has a duty to use reasonable care and diligence in the
 application of its knowledge and skill to its patient’s care.
 A violation of this duty is negligence.

 With respect to the plaintiff’s fourth contention, a nurse
 has a duty to use reasonable care and diligence and the
 application of her knowledge and skill to her patient’s care.
 A violation of this duty is negligence. With respect to the

 - 36 -
 SAVINO V. THE CHARLOTTE-MECKLENBURG HOSP. AUTH.

 Opinion of the Court

 plaintiff’s fifth contention, a hospital has a duty to provide
 health care in accordance with the standards of practice
 among similar health care providers situated in the same
 or similar communities under the same or similar
 circumstances at the time the health care is rendered. In
 order for you to find that the hospital did not meet this
 duty, the plaintiff must satisfy you by the greater weight of
 the evidence, first, what the standards of practice were
 among hospitals with similar resources and personnel in
 the same or similar communities at the time the defendant
 cared for [decedent], and, second, that the defendant did
 not act in accordance with those standards of practice. . . .
 A violation of this duty is negligence.

 With respect to the defendant’s sixth contention, a nurse
 has a duty to provide health care in accordance with the
 standards of practice among members of the same health
 care profession with similar training and experience
 situated in the same or similar communities at the time the
 health care is rendered. In order for you to find that the
 defendant’s employee, [the attending nurse], did not meet
 this duty, the plaintiff must satisfy you by the greater
 weight of the evidence, first, what the standards of practice
 were among members of the same health care profession
 with similar training and experience situated in the same
 or similar communities at the time [the attending nurse]
 cared for [decedent]. And, second, that [the attending
 nurse] did not act in accordance with those standards of
 practice. . . . A violation of this duty is negligence.

 In response to defendant’s argument that the inclusion of “implement”

intermingled the administrative negligence and medical negligence claims, plaintiff

cites Merriam-Webster in support of its’ contention that “implement” and “follow” are

nearly synonymous in meaning. Therefore, plaintiff asserts the trial court did not err

in using both terms in the jury instructions. Plaintiff also claims that Blanton v.

Moses H. Cone Mem’l Hosp., Inc., 319 N.C. 372, 376, 354 S.E.2d 455, 458 (1987),

 - 37 -
 SAVINO V. THE CHARLOTTE-MECKLENBURG HOSP. AUTH.

 Opinion of the Court

directly supports inclusion of “implement” in the instructions. We are not convinced

the inclusion of “implement” in the instructions for medical negligence was not error.

First, “implement” is never mentioned in Blanton. Second, while “implement” and

“follow” may be used similarly in some circumstances, they may also be used

differently. It is evident from the use of both “implement” and “follow” in the

instructions above in the alternative that the terms are not synonymous in this

instance.

 Nevertheless, when these instructions are considered in their entirety, it is

clear that the medical negligence instructions directed the jury to consider the

treatment and care provided by defendant to decedent. Although defendant is correct

that implementation of protocols, processes, procedures and/or policies is usually an

administrative duty, the use of “implement” three times in the above instructions in

the alternative to “follow” was not likely to mislead the jury when the instructions

are considered in their entirety. Defendant has failed to show that the trial court’s

error in allowing the administrative negligence claim to proceed impacted the jury

instructions to its detriment where ample evidence was presented that defendant

failed to follow its policies and that the attending emergency department nurse did

not collect or communicate pertinent medical information for decedent’s care.

 In regards to the evidence at trial, defendant contends the admission of

documents related to defendant’s application for accreditation as a Chest Pain Center

 - 38 -
 SAVINO V. THE CHARLOTTE-MECKLENBURG HOSP. AUTH.

 Opinion of the Court

and other evidence of policies and protocols was only relevant to the administrative

negligence claim, if at all, and would not have been admitted if plaintiff’s action was

only for medical negligence. Defendant asserts that this improper evidence “inflamed

and prejudiced the jury against the hospital, ultimately impacting the jury’s

determination on both negligence claims.”

 While evidence of policies and protocols may not necessarily establish the

standard of care, see O’Mara v. Wake Forest Univ. Health Sciences, 184 N.C. App. 428,

439, 646 S.E.2d 400, 406 (2007) (explaining that “violation of a hospital’s policy is not

necessarily a violation of the applicable standard of care, because the hospital’s rules

and policies may reflect a standard that is above or below what is generally

considered by experts to be the relevant standard”), evidence of the defendant’s

policies and protocols, or its purported policies and protocols, is certainly relevant and

properly considered alongside expert testimony to establish the standard of care for

medical negligence. As defendant points out, expert testimony in this case clarified

which policies and protocols were in place at CMC-Northeast.

 Although not all evidence of policies and protocols related to the defendant’s

application for accreditation as a Chest Pain Center may have been admitted into

evidence absent the trial court allowing the administrative negligence claim to

proceed, defendant has not shown that the evidence impacted the jury’s verdict on

medical negligence. This Court has long recognized that “[e]videntiary errors are

 - 39 -
 SAVINO V. THE CHARLOTTE-MECKLENBURG HOSP. AUTH.

 Opinion of the Court

harmless unless a defendant proves that absent the error a different result would

have been reached at trial.” State v. Ferguson, 145 N.C. App. 302, 307, 549 S.E.2d

889, 893, disc. review denied, 354 N.C. 223, 554 S.E.2d 650 (2001). Defendant’s

assertion that “the inflammatory nature of the evidence relating to the Chest Pain

Center application was palpable and highly prejudicial” is not sufficient proof.

 Defendant summarily claims that “absent this evidence . . . no rational jury

would have returned a $6.13 million verdict against the hospital based solely on [the

nurses] alleged negligence in communicating the decedent’s information to [the

attending physician].” We are not convinced.

 3. Pain and Suffering

 In the event we did not reverse outright or grant a new trial, defendant

alternatively asserts the trial court erred in allowing the jury to award damages for

pain and suffering because there was insufficient evidence of pain and suffering.

 The issue of pain and suffering was argued numerous times during trial before

the trial court allowed the issue to go to the jury. Defendant first moved for a directed

verdict on damages for “conscious pain and suffering” after it reviewed plaintiff’s

proposed jury instruction. Defendant argued “there was no evidence put on as to any

conscious pain and suffering of [decedent].” The trial court asked if either party

would like to be heard and both responded in the negative. The trial court then stated

 - 40 -
 SAVINO V. THE CHARLOTTE-MECKLENBURG HOSP. AUTH.

 Opinion of the Court

that it “would grant [a] directed verdict on that issue because there has been no

evidence as to pain and suffering of [decedent] . . . .”

 Immediately thereafter, plaintiff indicated that it would like to be heard on the

issue of pain and suffering, and the trial court obliged. Plaintiff admitted that no one

was around decedent to observe pain and suffering, but argued that does not mean it

didn’t happen. Plaintiff pointed out that one doctor testified decedent could have

experienced pain for an hour prior to his death, a second doctor testified decedent

could have experienced pain for 20 minutes prior to his death, and a third doctor

testified he didn’t know one way or the other. Plaintiff then concluded its argument

stating:

 So there is evidence of conscious pain and suffering. Well,
 there’s evidence that it could have existed, but I don't think
 that the jury should be precluded from considering that
 because there was evidence that -- nobody really knows
 because nobody observed it, but there certainly is evidence
 that it could have occurred from defendant’s witnesses and
 also for plaintiff’s witnesses.

In response, defendant argued “possibly or could have . . . does not meet the burden

of proof in terms of more likely than not [decedent] had conscious pain and

suffering[,]” adding that evidence of “more likely than not” is “what they would need

to submit to support any jury award for that element. A mere possibility or that it

could have happened would not meet the burden of proof.” Upon consideration of the

arguments, the trial court “once again [found] that there has not been sufficient

 - 41 -
 SAVINO V. THE CHARLOTTE-MECKLENBURG HOSP. AUTH.

 Opinion of the Court

evidence of conscious pain and suffering to meet the legal standard” and granted

defendant’s motion for a directed verdict on damages for pain and suffering.

 Plaintiff then changed its argument and sought for a third time to address the

issue of pain and suffering, arguing that decedent experienced pain and suffering

from the time he was first admitted to the emergency department and as a result of

anxiety from being discharged without answers. For a third time, the trial court

granted defendant’s motion for a directed verdict on damages for pain and suffering.

 Following the weekend recess, plaintiff again raised the issue by objecting to

the trial court’s prior rulings when the proceedings reconvened. At that point,

plaintiff had revisited the testimony of Dr. Andrew Selwyn and was able to direct the

court to the doctor’s testimony that it was more likely than not that decedent would

have experienced chest pain. Defendant simply responded that there was no evidence

of actual chest pain. Based on the plaintiff’s argument, the trial court changed its

ruling, explaining that “there is some evidence so . . . it is a factual issue. . . . [W]e’ll

need to put the pain and suffering back in the instructions . . . for the jury to make

that determination.”

 Now on appeal, defendant contends the only relevant evidence, Dr. Selwyn’s

testimony, amounts to speculation. Defendant therefore claims the evidence failed to

meet plaintiff’s burden to support an award of damages for pain and suffering.

 - 42 -
 SAVINO V. THE CHARLOTTE-MECKLENBURG HOSP. AUTH.

 Opinion of the Court

 “The law disfavors-and in fact prohibits-recovery for damages based on sheer

speculation.” DiDonato v. Wortman, 320 N.C. 423, 430, 358 S.E.2d 489, 493 (1987)

(internal citations omitted). Both plaintiff and defendant acknowledge that

“[d]amages must be proved to a reasonable level of certainty, and may not be based

on pure conjecture.” Id. at 431, 358 S.E.2d at 493. In DiDonato, the Court relied on

its much earlier decision in Norwood v. Carter, 242 N.C. 152, 87 S.E.2d 2 (1955), in

which the Court held, “[n]o substantial recovery may be based on mere guesswork or

inference . . . without evidence of facts, circumstances, and data justifying an

inference that the damages awarded are just and reasonable compensation for the

injury suffered.” Id. at 156, 87 S.E.2d at 5. Based on this reasoning, the Court held

in DiDonato that “damages for the pain and suffering of a decedent fetus are

recoverable if they can be reasonably established.” 320 N.C. at 432, 358 S.E.2d at

494.

 In this case, the only testimony identified by plaintiff as supporting the award

damages for pain and suffering was as follows:

 Q. Is there any relevance to the fact that [decedent] had
 presented with chest pain earlier that day as to whether
 that same chest pain would have arisen before he really
 got in trouble with this event?

 A. Yes, it’s relevant.

 Q. And tell us why that’s relevant.

 A. Well, he presented with a fairly typical picture of chest

 - 43 -
 SAVINO V. THE CHARLOTTE-MECKLENBURG HOSP. AUTH.

 Opinion of the Court

 pain radiating to the stomach, up into the neck, to the
 hands, which went away with nitroglycerin. So that’s
 the way this man presents. So somewhere around 8, 9
 or 9, 10, 11 o’clock that night, more likely than not he
 would have got chest pain again and manifested
 ischemia, which would have been treated.
 Unfortunately, he was at home, it wasn’t treated, and it
 just progressed and he died.

 Q. So because he had previously presented with chest
 pains from ischemia, more likely than not that would
 have occurred again giving warning to the staff, if he
 was at the hospital, if that situation arose?

 A. Yes.

Defendant contends this testimony was insufficient because it is speculative.

Defendant also points to conflicting testimony. Plaintiff contends this testimony was

sufficient proof to a reasonably degree of certainty because Dr. Selwyn testified that

it was “more likely than not.”

 Although we agree with plaintiff that testimony that something “is more likely

than not” is generally sufficient proof that something occurred, Dr. Selwyn’s

testimony, standing alone, is insufficient to support proof of damages for pain and

suffering to a reasonable degree of certainty where there was no further evidence for

the jury to consider. And while it is not this Court’s job to reweigh the evidence, we

do note that ample other evidence was presented to show that plaintiff may not have

experienced any further chest pain. Dr. Selwyn even testified that there was “no

direct evidence” of chest pain following decedent’s discharge from the emergency

department. Where the only evidence is that it was likely decedent experienced chest

 - 44 -
 SAVINO V. THE CHARLOTTE-MECKLENBURG HOSP. AUTH.

 Opinion of the Court

pain because he had previously experienced chest pain, we hold the evidence was

insufficient to establish damages for pain and suffering to a reasonable degree of

certainty.

 The trial court instructed the jury that “[n]oneconomic damages are damages

to compensate for pain, suffering, emotional distress, loss of consortium,

inconvenience and any other non-pecuniary compensatory damage.” The trial court

then instructed the jury that it may consider the following categories of non-economic

damages in this case: “[p]ain and suffering and the present monetary value of

[decedent] to his next of kin from his society, companionship, comfort, guidance,

kindly offices, advice, protection, care or assistance from the services that he provided

for which you do not find a market value.” Defendant has only challenged the

sufficiency of the evidence for pain and suffering.

 Because the jury verdict in this case only separated the damages into economic

damages and non-economic damages and did not further break down the non-

economic damages by categories, it is impossible to determine what portion of the

jury’s award of non-economic damages was for pain and suffering. As a result, this

Court cannot just vacate the award of damages for pain and suffering, but instead

must remand for a new trial on the issue of non-economic damages.

 4. Contributory Negligence

 - 45 -
 SAVINO V. THE CHARLOTTE-MECKLENBURG HOSP. AUTH.

 Opinion of the Court

 Lastly, defendant argues in the alternative that if it is not entitled to an

outright reversal or a new trial, the trial court erred in granting plaintiff’s motion for

a directed verdict on defendant’s contributory negligence defense. Plaintiff moved for

a directed verdict on contributory negligence at the close of all the evidence and the

trial granted plaintiff’s motion, finding that no evidence of contributory negligence by

the decedent had been presented.

 “[C]ontributory negligence is negligence on the part of the plaintiff which joins,

simultaneously or successively, with the negligence of the defendant alleged in the

complaint to produce the injury of which the plaintiff complains.” Watson v. Storie,

60 N.C. App. 736, 738, 300 S.E.2d 55, 57 (1983) (internal quotation marks and

citations omitted). Our Supreme Court has explained that

 [i]n this state, a plaintiff’s right to recover . . . is barred
 upon a finding of contributory negligence. The trial court
 must consider any evidence tending to establish plaintiff’s
 contributory negligence in the light most favorable to the
 defendant, and if diverse inferences can be drawn from it,
 the issue must be submitted to the jury. If there is more
 than a scintilla of evidence that plaintiff is contributorily
 negligent, the issue is a matter for the jury, not for the trial
 court.

Cobo v. Raba, 347 N.C. 541, 545, 495 S.E.2d 362, 365 (1998) (internal citations

omitted).

 In this case, defendant contends there was substantial evidence from which

the jury could reasonably find that decedent was contributorily negligent. Defendant

then identifies decedent’s failure to report to the attending nurse and the attending

 - 46 -
 SAVINO V. THE CHARLOTTE-MECKLENBURG HOSP. AUTH.

 Opinion of the Court

physician that he was given aspirin and nitroglycerin for his chest pain by EMS prior

to this arrival at the emergency department. Defendant compares this case to cases

in which patients failed to report their symptoms, or the worsening of symptoms, to

their healthcare providers. See Cobo, 347 N.C. at 546, 495 S.E.2d at 366; McGill v.

French, 333 N.C. 209, 220-21, 424 S.E.2d 108, 114-15 (1993); Katy v. Capriola, 226

N.C. App. 470, 478, 742 S.E.2d 247, 253-54 (2013). Under these precedents,

defendant contends decedent had an affirmative duty to report that EMS gave him

medication in the ambulance.

 We are not convinced that this case is similar to those cases cited by defendant.

There is no indication that decedent in this case failed to report his symptoms to

medical personnel. In fact, the evidence shows that decedent was involved in his

treatment and sought answers for his continuing discomfort. Moreover, we are not

convinced that the failure to report symptoms is analogous to decedent not reporting

that EMS gave him medication to relieve his chest pain in route to the hospital. We

agree with the trial court that there was no evidence of contributory negligence on

the part of decedent in this case. Thus, the trial court did not err in granting

plaintiff’s motion for a directed verdict on the issue.

 III. Conclusion

 For the reasons stated, we hold the trial court erred in allowing plaintiff to

proceed at trial on a theory of administrative negligence. That error, however, did

 - 47 -
 SAVINO V. THE CHARLOTTE-MECKLENBURG HOSP. AUTH.

 Opinion of the Court

not prejudice the jury verdict on plaintiff’s medical negligence claim. The trial court

also erred in allowing the jury to award damages for pain and suffering and,

therefore, a new trial is required on non-economic damages only. The trial court did

not err in granting plaintiff’s motion for a directed verdict on the issue of contributory

negligence.

 REVERSE IN PART, VACATE IN PART, NEW TRIAL IN PART.

 Judge INMAN concurs.

 Judge MURPHY concurs in result only.

 - 48 -